**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JACK YETIV; TREIMEE CORPORATION,
*Petitioners,*

v.

U. S. DEPARTMENT OF HOUSING AND
URBAN DEVELOPMENT,
*Respondent.*

No. 04-76044

HUD No.
CV-03-00665-
LRH/VPC

OPINION

On Petition for Review of an Order of the
Department Of Housing & Urban Development

Argued and Submitted
November 15, 2006—San Francisco, California

Filed September 20, 2007

Before: William C. Canby, Jr., John T. Noonan, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Canby;
Concurrence by Judge Noonan

## COUNSEL

Jack Z. Yetiv, Gardnerville, Nevada, for the petitioners.

Greg Addington, Assistant United States Attorney, Reno, Nevada, for the respondent.

**OPINION**

CANBY, Circuit Judge:

Jack Yetiv and his wholly-owned TREIMee Corporation (collectively, "Yetiv") petition for review of an administrative decision of the U.S. Department of Housing and Urban Development ("HUD") imposing civil monetary penalties under 12 U.S.C. § 1735f-15(c). The penalties were imposed for Yetiv's failure to provide HUD with audited annual financial statements relating to the operation of Yetiv's multi-family housing project, which Yetiv purchased with a HUD-insured loan. Yetiv presents numerous challenges to HUD's decision, most notably that: (1) HUD was without jurisdiction to impose penalties because Yetiv pre-paid the HUD-insured loan prior to the final adjudication of HUD's Administrative Law Judge ("ALJ"); (2) the decision to impose penalties was arbitrary and capricious in violation of section 706(2)(a) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(a), because the ALJ applied an illogical standard in determining that the violations were "material" (and hence eligible for penalties); and (3) the decision imposing penalties was not supported by substantial evidence. We affirm.

**Background**

The Park on Westview property ("the property") is a 212-unit multi-family housing project in Houston, Texas. Yetiv purchased the property in 1997 with a HUD-insured loan. To secure HUD insurance, Yetiv was required to sign a regulatory agreement which imposed various duties related to the management and financial operations of the property, including the duty to submit annual financial statements. As a multi-family mortgagor, Yetiv was additionally subject to the Civil Money Penalty statute, 12 U.S.C. § 1735f-15, which authorizes HUD to impose civil penalties against mortgagors who "knowingly and materially" commit certain enumerated violations. § 1735f-15(b)(1). One of the violations for which civil

penalties may be imposed is the failure to provide HUD with annual audited financial statements. *See* § 1735f-15(c)(1)(B)(x).

After Yetiv failed to file financial statements for the five fiscal years spanning 1997-2001, HUD issued an administrative complaint in July 2002 seeking civil penalties pursuant to the Civil Monetary Penalty statute. Five months later, prior to an adjudication on the merits, Yetiv prepaid the HUD-insured loan. Despite Yetiv's contention that his early payment deprived HUD of jurisdiction to maintain the enforcement action, the HUD ALJ issued a summary judgment order finding that TREIMee "knowingly and materially" violated the financial reporting requirement for the years 1997 - 2001. After a hearing to determine the amount of TREIMee's penalty and the extent of Yetiv's individual liability as an officer of TREIMee, the ALJ issued an Initial Decision ordering TREIMee to pay $50,000.00 for its violations and imposing a penalty of $20,000 against Yetiv and TREIMee jointly and severally.[1] Yetiv subsequently appealed to the Secretary of HUD, who adopted the ALJ decision without change. Yetiv petitions for review and we have jurisdiction under 12 U.S.C. § 1735f-15(e) over Yetiv's timely petition for review.

## Standard of Review

We review de novo the scope of an agency's jurisdiction. *Saratoga Sav. & Loan Ass'n v. Fed. Home Loan Bank Bd.*, 879 F.2d 689, 691 (9th Cir. 1989). HUD's decision to impose civil money penalties is reviewed pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. 12 U.S.C.

---

[1]Yetiv (individually) was not penalized for his pre-2002 violations because, prior to that year, the Civil Monetary Penalty statute applied only to mortgagors. Congress amended the statute in 1997 to add additional liable parties, including officers and directors of corporate mortgagors. Pub. L. No. 105-65, § 561(a)(2)(B)(i), 111 Stat. 1344, 1415 (Oct. 27, 1997) (codified as amended at 12 U.S.C. § 1735f-15(c)(1)(A)(iii)).

§ 1735f-15(e)(3). Under Section 706, HUD's action "must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 414 (1971), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977), (quoting 5 U.S.C. § 706(2)(A), (B), (C), and (D)). We must also set aside any factual findings that are not supported by substantial evidence. § 706(2)(E).

## Discussion

As a threshold matter, Yetiv contends that HUD lacked jurisdiction to impose civil money penalties because he prepaid the HUD-insured loan prior to the final adjudication. We reject that contention.

**[1]** Under 12 U.S.C. § 1735f-15(c)(1)(A), the Secretary of HUD has jurisdiction to proceed against mortgagors who commit any of the violations listed in subsection (B), including the failure to file an annual financial statement. § 1735f-15(c)(1)(B)(x). The governing statute does not state that the Secretary loses jurisdiction to prosecute past violations the moment a HUD-insured mortgage is paid off. An agency generally does not lose jurisdiction over a claim for money penalties because of the post-violation actions of the violator. *See Reich v. Occupational Safety & Health Review Comm'n*, 102 F.3d 1200, 1202 (11th Cir. 1997). The general rule is that liability for civil penalties attaches at the time of the violation, *see, e.g., San Francisco BayKeeper, Inc. v. Tosco Corp.* 309 F.3d 1153, 1159-60 (9th Cir. 2002), and we see no reason to create an exception in this case. Were we to accept Yetiv's argument, the practical effect would be to encourage mortgagors to forego the expense of compliance because, in the event of an enforcement action, they could always escape liability by prepaying the HUD-insured mortgage before the assessment of penalties. Yetiv's early payment of the loan,

after his failure to supply annual financial statements to HUD, accordingly did not deprive HUD of jurisdiction to maintain the enforcement action and, ultimately, to impose penalties.

**[2]** At oral argument, Yetiv characterized himself as the victim of a vendetta: he had paid off his loan, neither HUD nor the public had lost any money, and it was simply asking too much to require annual audited statements and to persevere in that requirement after the loan had been paid off. Unquestionably there is considerable exasperation on the part of both parties reflected in the record. But surely HUD is entitled to require, by regulation and agreement, that the borrowers it insures regularly document the financial health of their HUD-insured projects.[2] And Congress has authorized HUD to exact monetary penalties for the failure to file such reports. *See* § 1735f-15(c)(1)(B)(x). Collection of a penalty here serves a deterrent purpose that goes beyond the circumstances of Yetiv's successful loan; it discourages other project operators from failing to file audited financial statements. Requiring such statements across the board is a legitimate regulatory and legislative goal.

**[3]** We also are not persuaded by Yetiv's primary procedural argument. He contends that HUD's decision to impose penalties was arbitrary and capricious because the ALJ used an illogical standard for determining whether the violations were "material." Under the controlling regulations, a material violation is one that is significant in some respect or to some degree. 24 C.F.R. § 30.10. The ALJ found that Yetiv's violations were significant by considering, as the Secretary requires, the so-called "totality of circumstances" factors set forth in 24 C.F.R. § 30.80 (the same factors used to determine the amount of the penalty). As relevant here, these factors are: the gravity of the offense, § 30.80(a); any history of prior offenses, § 30.80(b); the ability to pay the penalty, §30.80(c); the injury to the public, § 30.80(d); any benefits received by

---

[2]Yetiv's regulatory agreement with HUD also required annual audits.

the violator, or the extent of potential benefit to other persons, § 30.80(e), (f); deterrence of future violations, § 30.80(g); the degree of the violator's culpability, § 30.80(h); and such other matters as justice may require, § 30.80(j).

**[4]** Yetiv argues, and we tend to agree, that some of these factors (notably, the violator's ability to pay), while perhaps relevant to the determination of the amount of a penalty, have no logical relationship to the significance of the underlying violation. The issue here, however, is not whether HUD's materiality standard is logical in the abstract, but whether its application in this case resulted in a decision that is arbitrary or capricious. The ALJ acknowledged the inapplicability of some of the HUD-prescribed factors, but carefully based his decision on two factors that do logically relate to materiality: the injury to the public, and the fact that Yetiv benefitted economically from his violations. Relying on irrelevant factors renders an agency adjudication arbitrary and capricious. *See City of Los Angeles v. U.S. Dep't of Commerce*, 307 F.3d 859, 874 (9th Cir. 2002). Here, however, the ALJ did not do so. Yetiv has cited no authority, and we have found none, for the proposition that a decision based on appropriate considerations may be set aside simply because the standard used to reach it requires consideration of other factors that were found to be inapplicable (and therefore did not guide the determination). HUD's standard for determining materiality is certainly a candidate for revision, but we cannot say that the ALJ's decision to impose penalties in this case was arbitrary or capricious.

**[5]** Nor are we persuaded by Yetiv's challenges to the sufficiency of evidence. In support of his finding that Yetiv's violations were committed "knowingly," the ALJ relied on admissions by Yetiv, an attorney, that he was informed of the financial reporting requirement prior to entering into the regulatory agreement. These admissions constitute substantial evidence of a knowing violation even if, as Yetiv claims, his private mortgage broker advised him that the financial report-

ing requirement was not routinely enforced. *See* 12 U.S.C. § 1735f-15(h) (a knowing violation may be established, among other ways, by proof that the mortgagor acted "with reckless disregard" of the statutory prohibitions).

**[6]** In support of his conclusion that Yetiv's violations were material, and to determine the amount of the penalty, the ALJ found that Yetiv benefitted by failing to provide the required audited statements for the five years in question in an amount at least equal to the cost of compliance. At the penalty phase, the ALJ additionally relied upon a survey showing that, for the fiscal years 2001 and 2002, the annual financial audit costs of fourteen comparable Houston-area, multi-family projects ranged from $6,000 to $24,631, and averaged $9,118. Because, as the ALJ noted, the audit costs reflected in the government's survey included both the cost of audited financial statements and the cost of preparation of tax returns, it was not possible to determine with precision what portion of the total costs were attributable to the cost of audited financial statements. Despite this deficiency in the record, the ALJ was entitled to infer from the survey that a substantial portion of the $9,118 average was incurred for the preparation of an audited financial statement. We conclude, therefore, that sufficient evidence exists to support both the determination of materiality, *see* Order on Secretarial Review, *Matter of Associate Trust Financial Servs. (Associate Trust III)*, HUDALJ 96-008-CMP (Nov. 20, 1997) (evidence of even one factor may lead to a conclusion that a violation is material),[3] and the amount of the penalties imposed ($50,000 against TREIMee, and $20,000 against Yetiv and TREIMee jointly).

We have carefully reviewed the many other arguments

---

[3]Our conclusion that evidence of economic benefit to Yetiv was sufficient to support the imposition of penalties makes it unnecessary to consider Yetiv's argument that the ALJ erred when he found that the risk to the insurance fund caused by Yetiv's violations was an "injury to the public" cognizable under 24 C.F.R. § 30.80(d).

presented by Yetiv, individually and for his corporation, and find them to be without merit. Accordingly, the ALJ's order imposing civil money penalties is

**PETITION FOR REVIEW DENIED.**

---

NOONAN, Circuit Judge, concurring:

At oral argument, Yetiv, a lawyer representing himself, made a spirited case that he was the object of bureaucratic spite. Reading the record has not entirely dispelled that impression. Yetiv says he was doing what others did; the government had no loss; he was picked on out of pique. Nonetheless, Yetiv's legal arguments do not carry the day. Analogously, a claim of "selective prosecution" of a crime is rarely a winner. *Oyler v. Boles*, 368 U.S. 448, 456 (1962) ("the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation.") HUD, when I first became acquainted with it in redevelopment work fifty years ago, was a lumbering agency, slow to act and not very vigilant in the performance of its duties. It does not seem to have changed. Yet an annual report on the financial health of projects financed by the federal government is not an unreasonable requirement. Failure to file is a material harm to the agency providing the money. However casually and unexpectedly HUD decides to make an example of a developer, it acts within its jurisdiction and is not arbitrary in asserting the need of annual reports as a material aid to its activities.