**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| CAHTO TRIBE OF THE LAYTONVILLE RANCHERIA,<br><br>*Plaintiff-Appellant*,<br><br>v.<br><br>AMY DUTSCHKE, Regional Director for the Pacific Region, Bureau of Indian Affairs, United States Department of the Interior; KENNETH LEE SALAZAR, Secretary of the Interior, United States Department of the Interior; KEVIN K. WASHBURN,[*] Assistant Secretary for Indian Affairs, United States Department of the Interior,<br><br>*Defendants-Appellees*. | No. 11-17847<br><br>D.C. No.<br>2:10-cv-01306-GEB-GGH<br><br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
Garland E. Burrell, Jr., Senior District Judge, Presiding

Argued and Submitted
December 5, 2012—San Francisco, California

---

[*] Kevin K. Washburn is substituted for his predecessor, Larry Echo Hawk, as Assistant Secretary for Indian Affairs, United States Department of Interior, pursuant to Fed. R. App. P. 43(c)(2).

Filed May 15, 2013

Before:  Alex Kozinski, Chief Judge, Michael Daly
Hawkins and Mary H. Murguia, Circuit Judges.

Opinion by Judge Hawkins

## SUMMARY[**]

### Tribal Law

The panel reversed the district court's judgment affirming
the federal Bureau of Indian Affairs' decision in favor of
federal defendants in an action brought by the Cahto Tribe of
the Laytonville Rancheria, seeking to set aside the Bureau of
Indian Affairs' decision to direct the Tribe to place the names
of certain disenrolled individuals back on its membership
rolls.

The panel held that the Tribe's governing documents did
not provide for an appeal to the Bureau of Indian Affairs of
the Tribe's disenrollment action.

[**] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

**COUNSEL**

Colin C. Hampson (argued), Sonosky, Chambers, Sachse, Endreson & Perry, LLP, San Diego, California; and Reid Peyton Chambers, Sonosky, Chambers, Sachse, Endreson & Perry, LLP, Washington, D.C., for Plaintiff-Appellant.

Elizabeth Ann Peterson (argued), Attorney, Robert G. Dreher, Acting Assistant Attorney General, and William B. Lazarus and Barbara M.R. Marvin, Attorneys, Environment & Natural Resource Division, United States Department of Justice, Washington, D.C., for Defendants-Appellees.

Zuzana S. Ikels (argued), Coblentz, Patch, Duffy & Bass, LLP, San Francisco, California, for Amicus Curiae The Sloan Family.

**OPINION**

HAWKINS, Senior Circuit Judge:

This case touches on critical and sensitive issues of tribal membership that are generally beyond our review because "[a] tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n.32 (1978). This matter comes to us under the Administrative Procedure Act ("APA"). The Cahto Tribe of the Laytonville Rancheria ("Tribe" or "Cahto Tribe")[1] seeks to set aside a decision of the Bureau of Indian

---

[1] The Cahto Tribe is a federally recognized Indian tribe located in Northern California.

Affairs ("BIA") directing the Tribe to place the names of certain disenrolled individuals back on its membership roll. The BIA issued its decision pursuant to regulations providing for administrative review of adverse tribal enrollment actions where, as the BIA believed in this case, a tribe has authorized such review.  *See* 25 C.F.R. § 62.4.

The Cahto Tribe is a small tribe, with less than 100 voting members; twenty-two of them will remain disenrolled if the Tribe's decision stands.  We pass no judgment on the disenrollment and decide only whether the district court was correct in affirming the BIA's decision under the APA. Ultimately, resolution of this case requires us to determine only a very narrow issue: whether the Tribe's governing documents provide for an appeal to the BIA of its disenrollment action.  Because we determine that they do not, we reverse.[2]

## I.

This case arises from the Cahto Tribe General Council's September 19, 1995 vote to remove twenty-two members from the tribal membership roll.[3]   The decision was ostensibly made on the basis of a determination that each of the individuals "ha[d] been affiliated with other tribes by being included on formal membership rolls and/or [had] been a distributee of a reservation distribution plan, namely the

---

[2]   A separate Memorandum disposition filed concurrently with this Opinion addresses a related intervention issue raised in *Cahto Tribe of the Laytonville Rancheria v. Sloan*, No. 11-15104.

[3] This disenrollment was purportedly confirmed in 1999 by a tribal resolution that "substantiat[ed]" the removal.

Hoopa[-] Yurok settlement," in violation of tribal membership requirements in the Tribe's Articles of Association ("Articles").[4]

Shortly after the initial disenrollment, the Tribe's attorney wrote to the BIA Superintendent ("Superintendent"), requesting the Superintendent to "honor the action taken by the Tribe and . . . recognize the existing tribal leaders." The Superintendent responded, noting that the matter was internal and should be referred to the Tribe's Executive Committee. The BIA reacted similarly to inquiries from disenrolled members. In 1999, one of the disenrolled members, Gene Sloan, specifically requested an appeal of the disenrollment on behalf of himself and the other disenrolled members, his family ("the Sloans"), directing his appeal requests to the BIA Regional Director ("Regional Director") and to the Superintendent. The record does not indicate that the BIA took any immediate action to address these purported appeals.

---

[4] To resolve litigation between the United States and tribes over ownership of resources in the Hoopa Valley Reservation, Congress directed the Secretary of the Interior to prepare a "roll of all persons who can meet the criteria for eligibility as an Indian of the Reservation." Hoopa-Yurok Settlement Act, 25 U.S.C. § 1300i-4. It provided three settlement options to persons included on the roll: (1) enroll as a member of the Hoopa Valley Tribe; (2) enroll as a member of the Yurok Tribe; or (3) take a "lump sum payment," after which the recipient would not have "any interest or right whatsoever in the tribal, communal, or unallotted land, property, resources, or rights within, or appertaining to, the Hoopa Valley Reservation, the Hoopa Valley Tribe, the Yurok Reservation, or the Yurok Tribe." 25 U.S.C. § 1300i-5. The Tribe and the agency dispute whether taking funds pursuant to the Hoopa-Yurok Settlement Act, as the disenrolled individuals did, disqualified them for membership under the Tribe's Articles. We need not and do not decide this matter.

In 2000, the Superintendent, responding to a letter from a tribal attorney, stated that the BIA would not recognize the Tribe's decision to disenroll members "based upon what [it] view[ed] as the [T]ribe's misinterpretation of the Hoopa-Yurok Settlement Act . . . relative to the [T]ribe's Articles of Association."   On administrative appeal, the Regional Director upheld the Superintendent's decision.

The Interior Board of Indian Appeals ("IBIA"), which had jurisdiction to review the BIA decisions, vacated both the decisions, determining that it would "not reach the merits of the enrollment dispute because . . . the BIA officials lacked decision-making authority in the circumstances."   In its decision, the IBIA did identify 25 C.F.R. Part 62 as a possible source of authority for the BIA to address the disenrollment. This regulation, as discussed below, provides that a person subject to an adverse enrollment action—including disenrollment—can appeal to the Secretary of the Interior "when the tribal governing document provides for an appeal of the action."   25 C.F.R. § 62.4(a)(3).   The IBIA nevertheless concluded that this regulation did not provide authority to review in that case because the decisions purported to address the Tribe's appeal, not Sloan's.

Finally, in a March 26, 2009 letter, the Regional Director explicitly took up Sloan's appeal, stating that he was "acting under the authority granted to [him] by the Tribe's [governing documents] and under the authority granted in 25 C.F.R. Part 62, to render a decision on [the] Appeals."   The Regional Director refused to recognize the disenrollments and directed the Tribe to place the disenrolled members back on the membership roll.

The Tribe sought review of this decision in district court pursuant to the Administrative Procedure Act. On cross-motions for summary judgment, the district court granted the Department of Interior's motion, affirming the BIA's decision. The court found, in relevant part, that the IBIA's 2002 decision did not bar the 2009 decision, the Tribe's governing documents authorized the BIA to consider the appeal, and that, because the Tribe's determination that the Sloans were ineligible for membership was incorrect as a matter of law, the BIA's 2009 decision was neither arbitrary nor capricious.

## II.

We now consider the Tribe's appeal from that decision. The Tribe challenges the BIA's decision on two grounds: (1) the Tribe's governing documents do not authorize the BIA to review the appeal; and (2) the BIA's decision was precluded by the IBIA's 2002 decision. Because we determine that the tribal governing documents did not authorize BIA review of the appeal, we do not reach the second ground.

## A.

We have jurisdiction to review final agency action, 5 U.S.C. § 704, and the BIA's 2009 decision was final for the Department of the Interior, 25 C.F.R. § 62.10. We review a district court's grant or denial of summary judgment de novo. *Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1047 (9th Cir. 2010). Thus, we review directly the agency's action under the APA. *Gila River Indian Cmty. v. United States*, 697 F.3d 886, 891 (9th Cir. 2012). The APA requires us to "decide all relevant questions of law [and] interpret constitutional and

statutory provisions." 5 U.S.C. § 706. We must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or that are "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* §§ 706(2)(A),(C).

Whether the BIA had jurisdiction to review the disenrollment decisions in this case is a legal question that we review de novo. *Sauer v. U.S. Dep't of Educ.*, 668 F.3d 644, 650 (9th Cir. 2012); *Yetiv v. U.S. Dep't of Hous. & Urban Dev.*, 503 F.3d 1087, 1089 (9th Cir. 2007) ("We review de novo the scope of an agency's jurisdiction.").

**B.**

Title 25, Part 62 of the Code of Federal Regulations provides procedures for the "filing of appeals from adverse enrollment actions by tribal committees," if, in relevant part, "[a]n appeal to the Secretary is provided for in the tribal governing document."[5] 25 C.F.R. § 62.2. The regulations enumerate various "adverse enrollment action[s]" that an aggrieved individual may appeal, including: "The rejection of an application for enrollment or the disenrollment of a tribal member by a tribal committee when the tribal governing document provides for an appeal of the action to the Secretary." 25 C.F.R. § 62.4(a)(3).

---

[5] The regulations also apply if "[t]he adverse enrollment action is incident to the preparation of a tribal roll subject to Secretarial approval." 25 C.F.R. § 62.2(b)(1). Neither party argues that the BIA's authority in this case arises under this subsection.

We thus must decide whether the Tribe's governing documents provided for an appeal of disenrollment decisions. We agree with the Tribe that they do not.

## C.

The text of the Tribe's governing documents is central to the question of whether the Tribe authorized the BIA to review the disenrollment of the Sloans. In relevant part, the Tribe's Articles of Association ("Articles") provide:[6]

>   Article III. Membership
>
>   A. Membership of the Tribe shall consist of persons in the following categories whose eligibility for membership has been established in accordance with procedures set forth in an enrollment ordinance. . . :

---

[6] The Tribe amended its Articles in 2006 to remove a requirement that the BIA approve the enrollment ordinance. The Sloans dispute whether the Articles were validly amended and they appealed the BIA's certification of the amendments to the IBIA in 2008. In light of the BIA's 2009 decision, however, the IBIA appeal has stalled. *Sloan, et al. v. Acting Pac. Reg'l Dir.*, 51 IBIA 302, 303 (June 11, 2010). Nevertheless, the amendment does not bear materially on our analysis. Both the agency and the Tribe rely on the Ordinance as providing the authority to the BIA to review the disenrollments.

Consequently, we also do not address the Sloans' argument, set forth in their amicus brief, that the Tribe's charter documents are replete with references to the BIA, including references to the BIA in the Tribe's Articles of Association, which indicate that the Tribe unambiguously consented to the BIA's review and approval of all membership decisions and provides the authority for the BIA's review in this case.

. . . .

> 3. Persons . . . shall be ineligible for membership if they have been affiliated with any other tribe, group or band to the extent of (a) being included on a formal membership roll, (b) having received an allotment or formal assignment of land, [or] (c) having been named as a distributee or dependent of a distributee in a reservation distribution plan.

. . . .

> B. The membership roll shall be brought up to date annually in accordance with procedures established by [the Ordinance].

Pursuant to Article III, the Tribe adopted Ordinance No. 1 ("Ordinance"),[7] which provides in relevant part:

> Section 3:   Filing of Applications.   Any person who desires to be enrolled must file or have filed in his behalf a written application with the Enrollment Committee.

. . . .

> Section 4.  Enrolling Period.  Within 30 days after approval of this ordinance, the Enrollment Committee shall announce the

---

[7] The Ordinance was adopted in 1967 and remains in effect.

time allotted for enrolling and designate the place to file applications.

Section 5: Approval and Disapproval of Applications. The Enrollment Committee shall approve or disapprove the application and shall notify the applicant in writing of the action taken.

Section 6: Appeals. A person disapproved for enrollment shall be notified in writing of the reason(s) for disapproval and informed of his right to appeal to the Area Director, Bureau of Indian Affairs . . . . If the Area Director cannot sustain the decision of the Enrollment Committee, he shall instruct the Enrollment Committee to place the applicant's name on the roll. The Enrollment Committee and/or the applicant, if the application is further denied, shall have the right to appeal to the Commissioner of Indian Affairs.

. . . .

Section 7: Membership Roll Preparation. After final decisions have been rendered on all applications, a roll shall be prepared with a certification as to its correctness by the Enrollment Committee and the Area Director, Bureau of Indian Affairs.

Section 8: Keeping Membership Roll Current. Each new Executive Committee,

acting as an Enrollment Committee, shall be responsible for reviewing the membership roll and keeping the roll current by . . . making corrections as necessary, including deleting the names of persons on the roll who were placed there erroneously, fraudulently, otherwise incorrectly or who have relinquished membership by written request.

We hold that the Tribe's Ordinance is unambiguous and that it provides a right of appeal only for rejections of enrollment applications, not for disenrollment decisions. Sections three, four, five, six, and seven of the Ordinance discuss only "applicants" and "applications" for enrollment. Section six, which provides for an appeal to the BIA, provides appeal rights only for the rejection of applications for membership in the Tribe, providing in part: "A person disapproved for enrollment shall be . . . informed of his right to appeal to the [BIA]." It explicitly refers to the appeal rights of an "applicant." It is also preceded by Section five, "Approval and Disapproval of Applications," which provides that the "Enrollment Committee shall approve or disapprove the application and shall notify the applicant in writing of the action taken." Nowhere in the tribal documents is there a grant of authority to the BIA to review appeals from disenrollment decisions.

The agency argues that the plain language of Section six, the only section of the governing documents that provides for an appeal to the BIA from a membership decision, makes no distinction between enrollment applications and disenrollment actions, simply granting appeal rights to persons "disapproved for enrollment." Thus, it argues, appeal rights attach to both disapprovals of applications for

enrollment and the disapproval of a member's continued enrollment, including the Sloans' disenrollment.

The plain language of the Ordinance, however, is inconsistent with the agency's reading. *Cf. Perrin v. United States*, 444 U.S. 37, 42 (1979) (in statutory interpretation, "words will be interpreted as taking their ordinary, contemporary, common meaning"). The rejection of an application for enrollment and disenrollment are distinct. *Compare* WEBSTER'S NEW INTERNATIONAL DICTIONARY 755 (3d ed. 2002) (defining "enroll" as "to insert, register, enter in a list, catalog, or roll"), *with id.* at 643 (defining "disenroll" as "to release . . . from membership in an organization"). And, the Tribe plainly has not granted authority to the BIA to review disenrollment determinations.[8]

The agency supports its reading by pointing to the equitable implications of drawing such a distinction—new applicants would have the right to appeal a denial of an application for membership while life-long members who are disenrolled would be left without recourse—as well as procedural implications—disenrolled members would have to take the additional step of submitting a new application before their adverse membership determination would be subject to review. These consequences, however, do not

---

[8] The BIA's involvement in certification of the membership roll, as provided in Section seven, does not dictate a contrary result. While Section seven provides that the BIA must certify the membership roll—which can be kept current as provided in Section eight by "deleting names of persons on the roll who were placed there erroneously . . . [or] otherwise incorrectly"—as to its correctness after "final decisions have been rendered on all applications," it makes no mention of rights to appeal to the BIA specific Tribal membership determinations.

overcome the plain language of the Tribe's governing documents.

## III.

As we have observed before, cases about tribal membership often implicate issues "deeply troubling on the level of fundamental substantive justice." *Lewis v. Norton*, 424 F.3d 959, 963 (9th Cir. 2005). However, the Ordinance provides appeal rights only for rejected applications for enrollment.[9] The Tribe thus did not grant the authority to the BIA to review appeals from disenrollment. While mindful of the obstacles faced by these disenrolled individuals in applying for membership,[10] we nevertheless encourage them to reapply and to seek review by the BIA if their applications are rejected.

**REVERSED.**

---

[9] The agency concedes that the BIA gives deference to tribes' reasonable interpretations of their own laws. *United Keetoowah Bank of Cherokee Indians in Oklahoma v. Muskogee Area Director*, 22 IBIA 75, 80 (June 4, 1992). In light of our discussion above, the Tribe's interpretation was, at minimum, reasonable.

[10] First, under Section three of the Ordinance, the Tribe may designate times to open the membership roll, and the Tribe's position is that it is not obligated to open its rolls (and has done so only periodically, including in 2010 and 2011). Additionally, the Tribe asserts that applications of disenrolled members would be subject to a two-tiered consideration: The Tribe would first decide whether there had been an error in disenrollment and would then process the application.