**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| MARGARET MIRANDA; CLARA MIRANDA; CINDY GRIEGO; ROSANNA MIRANDA; HELEN HERRERA; ROSE ANN HERRERA; MONICA HERRERA; MICKI HERRERA; INEZ ALVAREZ; BELINDA MIRANDA, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> SALLY JEWELL, Secretary of the Interior; UNITED STATES DEPARTMENT OF THE INTERIOR, <br><br> Defendants-Appellees. | No.    15-55245 <br><br> D.C. No. 5:14-cv-00312-VAP-SP <br><br><br> MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, Chief Judge, Presiding

Submitted December 9, 2016[**]
Pasadena, California

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]    The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Before: CALLAHAN, BEA, and IKUTA, Circuit Judges.

Margaret Miranda and members of her family (collectively, the "Plaintiffs") are the daughters, granddaughters, and great-granddaughter of Rosa Pace, an enrolled member of the Santa Ynez Band of Chumash Mission Indians (the "Band"). Those Plaintiffs who are not already enrolled in the Band applied for enrollment, and those who are already enrolled applied to have their recorded degree of Santa Ynez blood increased.

Under Santa Ynez law, for enrollment in the Band, a person is required to have one-quarter or more Santa Ynez blood. Whether the Plaintiffs who seek enrollment have the requisite one-quarter Santa Ynez blood (and whether the remaining Plaintiffs are entitled to blood-degree increases) depends on whether Rosa Pace, their common ancestor, was a full-blooded or half-blooded Santa Ynez Indian. The parties point to conflicting sources of evidence on this issue: A roll of the Band's members prepared by the Bureau of Indian Affairs (the "Bureau") in 1940 (the "1940 Census Roll") lists Pace as a full-blooded Santa Ynez Indian. On the other hand, a membership roll prepared by the Band in 1965 (the "1965 Membership Roll") lists Pace's blood degree as one-half.

Relying on the 1965 Membership Roll, the Band denied the Plaintiffs' applications, and the Plaintiffs appealed to the Bureau. *See generally* 25 C.F.R. §§

2

62.1–62.12 (providing "procedures for the filing and processing of appeals from adverse enrollment actions by [the Bureau]"). The Bureau sustained the Band's decision to reject the Plaintiffs' applications.

The Plaintiffs then filed this suit against Secretary of the Interior Sally Jewell and the Department of the Interior (collectively, the "Defendants") challenging the Bureau's action on the Plaintiffs' appeal under the Administrative Procedure Act, 5 U.S.C. §§ 500–596. The district court granted the Defendants' motion for summary judgment, holding that the Bureau's action was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. The Plaintiffs timely appealed.

Regulations appearing in Part 62 of Title 25 of the Code of Federal Regulations provide that the Bureau "shall" hear an appeal from an Indian tribe's denial of an enrollment application where the tribe's "governing document" so provides. *See* 25 C.F.R. §§ 62.2, 62.10. In disposing of such an appeal, the Bureau does not abuse its discretion where it defers to an Indian tribe's "reasonable interpretation[] of [its] own laws." *Cahto Tribe v. Dutschke*, 715 F.3d 1225, 1230 n.9 (9th Cir. 2013). The reasonableness of a tribe's interpretation of its law is evaluated "based on the language of the [tribe's] governing documents[] and the past practice of the [tribe]." *Aguayo v. Jewell*, 827 F.3d 1213, 1228 (9th Cir. 2016).

Here, Article III of the Band's Articles of Organization provides that a person is eligible for enrollment in the Band if she is the "living descendant[]" of a "person[] whose name[] appear[s] on the [Band's] January 1, 1940 Census Roll" and if she has "one-fourth [] or more degree of Indian blood of the Band." Ordinance 2, passed by the Band's General Council in 1965, defines "Indian blood of the Band" to mean "the total percentage of Indian blood derived from an ancestor . . . who [was] listed on the [] 1940 Census Roll." Ordinance 2 also permits an applicant to appeal an adverse enrollment decision to the Bureau.

The Plaintiffs urge that Article III requires the Band to look only to the 1940 Census Roll—and no other documents—to determine an applicant's degree of Santa Ynez blood. Under Ordinance 2, however, the Band may consider "tribal records, information presented in the application[,] or other sources of information" when evaluating an enrollment application. Thus, the Band has interpreted Article III as *not* forbidding the Band to review documents other than the 1940 Census Roll in determining an applicant's "degree of Indian blood of the Band."

This interpretation is "reasonable" given "the language of the [Band's] governing documents[] and the past practice of the [Band]." *Aguayo*, 827 F.3d at 1228. Article III does not define the term "Indian blood of the Band," and although it refers to no documents other than the 1940 Census Roll, it neither expressly nor

4

impliedly prohibits the Band from considering such other documents when evaluating an enrollment application. Because the Band's interpretation of Article III is "reasonable," the Bureau did not abuse its discretion by deferring to it and sustaining the Band's rejection of the Plaintiffs' applications. Accordingly, the district court's grant of summary judgment for the Defendants is

**AFFIRMED**.