**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ALBERT P. ALTO; ANDRE E. ALTO;
ANTHONY ALTO; BRANDON ALTO;
CHRISTY ALTO; CHRISTOPHER J.
ALTO; DANIEL J. ALTO, JR.; DANIEL
J. ALTO, SR.; DOMINIQUE N. ALTO;
RAYMOND E. ALTO, SR.; RAYMOND
E. ALTO; RAYMOND J. ALTO, a
Representative for Ben Alto,
deceased, Marcus M. Alto, deceased,
Marcus R. Alto, deceased, David
Gomez, deceased, Susan Martinez,
deceased; ROBERT ALTO; RONALD J.
ALTO, SR.; VICTORIA (ALTO)
BALLEW; ANGELA (MARTINEZ-
MCNEAL) BALLON; JUAN J. BALLON;
REBECCA (ALTO) BALLON; RUBY
BALLON; JANICE J. BANDERAS;
PETER BANDERAS; VICTOR
BANDERAS; DAVID A. BROKIEWICZ;
DIANA BROKIEWICZ; PATRICIA D.
BROKIEWICZ; MONICA (SEPEDA)
DIAZ; ANTHONY FORRESTER;
DUSTIN FORRESTER; JOHANNA
(ALTO) FORRESTER; SARAH
FORRESTER; ERNEST GOMEZ;
HENRIETTA (ALTO) GOMEZ;
KATHLEEN M. GOMEZ; HUMBERTO
R. GREEN; LYDIA (ALTO) GREEN;
PAUL ANTHONY GREEN; MARY JO

No. 12-56145

D.C. No.
3:11-cv-02276-
IEG-BLM

OPINION

(ALTO) HURTADO; JUSTIN A. ISLAS;
CYNTHIA (SEPEDA) LEDESMA;
DESTINY C. LEDESMA; AMANDA M.
MINGES; ISABELLE M. SEPEDA; LUPE
SEPEDA; DEBORAH L. VARGAS;
DESIREE VARGAS; JEREMIAH
VARGAS; JESSIAH VARGAS; TERRY
WEIGHT; JASON ALTO; CAROL EDITH
CAVAZOS; AIMEE RENAE DIAZ;
DANIEL GOMEZ; LISA GOMEZ
HUNTOON; CHRISTINE MARTINEZ;
MARLENE M. MARTINEZ;
CASSANDRA SEPEDA; PAMELA J.
ALTO, as Guardian ad litem for
Marcus M. Green, a minor; PEDRO
BANDERAS, as Guardian ad litem for
Reina A. Banderas, a minor; DAWN
CASTILLO, as Guardian ad litem for
Alexis N. Ledesma, a minor, and
Jesse Ledesma, a minor; MARIA A.
PEREZ-ROLON, as Guardian ad litem
for Roland J. Alto, Jr., a minor;
MARTIN DIAZ, as Guardian ad litem
for Jessica Diaz, a minor, Toni L.
Diaz, a minor, and Jacob Diaz, a
minor; DONALD MARTINEZ, as
Guardian ad litem for Donelle
Martinez, a minor, Justine Martinez,
a minor, and Sabrina Martinez, a
minor,

*Plaintiffs-Appellees*,

v.

MICHAEL BLACK, Director of the Bureau of Indian Affairs of Department of Interior; ROBERT EBEN, Superintendent of the Bureau of Indian Affairs, Southern California Agency, of Department of Interior; KEVIN K. WASHBURN, Assistant Secretary of Indian Affairs of Department of Interior; SALLY JEWELL, Secretary of Department of Interior,

*Defendants-Appellees*,

And

DOE, Defendants, 1 through 10, inclusive,

*Defendant*,

SAN PASQUAL BAND OF MISSION INDIANS,

*Intervenor-Appellant*.

Appeal from the United States District Court
for the Southern District of California
Irma E. Gonzalez, Chief District Judge, Presiding

Argued and Submitted
February 11, 2013—Pasadena, California

Filed December 26, 2013

Before: Marsha S. Berzon and Paul J. Watford, Circuit
Judges, and James G. Carr, Senior District Judge.[*]

Opinion by Judge Berzon

---

**SUMMARY**[**]

---

**Tribal Affairs**

In an appeal from the district court's orders denying a
motion to dissolve a preliminary injunction and denying
motions to dismiss in an action concerning a dispute over
membership in an Indian tribe, the panel affirmed in part,
dismissed in part, and remanded.

The San Pasqual Band of Mission Indians' governing
documents vested the United States Department of Interior,
Bureau of Indian Affairs, with ultimate authority over
membership. The panel held that the district court had
jurisdiction to enjoin preliminarily the enforcement of the
Bureau of Indian Affairs' order upholding the Band's
decision to disenroll descendants of Marcus Alto, Sr. from the
Band, and that the Band was not a required party, because the
claims underlying the preliminary injunction concern solely
the propriety of final agency action. Accordingly, the panel
affirmed the district court's denial of the Band's motion to

---

[*] The Honorable James G. Carr, Senior District Judge for the U.S.
District Court for the Northern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

dismiss the claims on which the injunction rests and the district court's consequent refusal to dissolve the preliminary injunction. The panel remanded to allow the district court to clarify its order. Finally, the panel held that it lacked jurisdiction to review on interlocutory appeal the Band's motion to dismiss the Altos' other claims, on which the district court expressly deferred ruling.

## COUNSEL

Geoffrey D. Strommer (argued), Vernon L. Peterson, and Timothy C. Seward, Hobbs, Straus, Dean & Walker, LLP, Portland, Oregon, for Intervenor-Appellant.

Thor O. Emblem (argued) and Tracy L. Emblem, Law Offices of Thor O. Emblem, Escondido, California, for Plaintiffs-Appellees.

John L. Smeltzer (argued), Ignacia S. Moreno, Assistant Attorney General, and Katherine J. Barton, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C., for Federal Appellees.

**OPINION**

BERZON, Circuit Judge:

Our question concerns the propriety of a preliminary injunction issued with regard to a dispute over membership in an Indian tribe.  "'[A] tribe's right to define its own membership for tribal purposes has long been recognized as central to its existence as an independent political community.'"  *Cahto Tribe of Laytonville Rancheria v. Dutschke*, 715 F.3d 1225, 1226 (9th Cir. 2013) (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 72 n.32 (1978)).  In view of the importance of tribal membership decisions and as part of the federal policy favoring tribal self-government, matters of tribal enrollment are generally beyond federal judicial scrutiny. *See Lewis v. Norton*, 424 F.3d 959, 961 (9th Cir. 2005).  Here, however, the tribe's own governing documents vest the United States Department of Interior, Bureau of Indian Affairs ("BIA"), with ultimate authority over membership decisions.  The issues in this case center on whether, and to what degree, this circumstance varies the usual judicial "hands off" policy for tribal membership decisions.

Specifically, we must decide whether the district court had jurisdiction to enjoin preliminarily the enforcement of a BIA order upholding the Band's decision to disenroll descendants of Marcus Alto, Sr. ("the Altos"), from the San Pasqual Band of Mission Indians ("the Band" or "the Tribe"), and whether such injunctive relief may issue in the Band's absence.  We hold that the exercise of jurisdiction was proper, and that the Band is not a required party for the adjudication of the claims underlying the preliminary injunction, as they concern solely the propriety of final agency action.

Accordingly, we affirm the district court's denial of the Band's motions to dismiss the claims on which the injunction rests and its consequent refusal to dissolve the preliminary injunction. And we remand to allow the district court formally to clarify its order in compliance with our understanding of it, as described below. We lack jurisdiction to review on interlocutory appeal the Band's motion to dismiss the Altos' other claims, on which the district court expressly deferred ruling.

## I. FACTS & PROCEDURAL HISTORY

### A. The Enrollment Dispute

The San Pasqual Band of Mission Indians is a federally recognized Indian tribe whose ancestors occupied the San Pasqual Valley, east of San Diego, California. Article III, section 2 of the Band's Constitution gives the Secretary of the Interior final authority over tribal enrollment decisions. *See* Const. & Bylaws of the San Pasqual Band of Mission Indians, art. III, § 2 ("Const. of the Band"). The Constitution also expressly incorporates federal regulations, adopted in 1960 and formerly codified at 25 C.F.R. §§ 48.1–48.15 ("the 1960 Regulations"), which addressed tribal enrollment criteria, the process for completing an initial membership roll, the procedures for keeping the membership roll current, and the purposes for which the roll was to be used.

The 1960 Regulations have since been removed from the Code of Federal Regulations,[1] but the reference to them

---

[1] *See* Enrollment of Indians of the San Pasqual Band of Mission Indians in California, 52 Fed. Reg. 31391-01 (Aug. 20, 1987) (noting the redesignation of the 1960 Regulations from 25 C.F.R. Part 48 to 25 C.F.R.

remains in the Tribe's Constitution.  The parties agree that the substance of the otherwise defunct 1960 Regulations survive as tribal law and govern enrollment decisions for the Band.

In 1987, Marcus Alto, Sr. and his descendants applied to be added to the San Pasqual Band membership roll, on the basis of Marcus Alto Sr.'s claimed linear descent from Jose Alto and Maria Duro, both listed as members of the Band on the 1910 Census Roll.[2]  Under 25 C.F.R. § 48.5(b) (1960), "[d]escendants of Indians whose names appear as members of the Band on the Census Roll" are eligible for enrollment, provided they possess one-eighth or more degree of Indian blood of the Band and are not affiliated with any other tribe. The Altos' applications were adjudicated by the BIA's Superintendent of the Southern California Agency after Alto, Sr.'s death in 1988, resulting, in 1991, in a finding that the Altos were eligible for membership.  The Band appealed the enrollment decision to the BIA's Assistant Secretary–Indian Affairs, who affirmed.

So stood the Altos' legal status until, in 2007, an individual member of the Band formally challenged Marcus

Part 76); Enrollment of Indians; Removal of Regulations, 61 Fed. Reg. 27780-01 (June 3, 1996) (removing Part 76).  All references to the federal regulations incorporated into the Band's Constitution are to the version adopted in 1960.

[2] Such membership disputes have been proliferating in recent years, largely driven by the advent of Indian gaming, the revenues from which are distributed among tribal members. *See generally* Suzianne D. Painter-Thorne, *If You Build It, They Will Come: Preserving Tribal Sovereignty in the Face of Indian Casinos and the New Premium on Tribal Membership*, 14 Lewis & Clark L. Rev. 311, 313 & nn.8–10, 320 (2010); *see also Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1014–15 (9th Cir. 2007); *Lewis*, 424 F.3d at 960.

Alto, Sr.'s enrollment before the Band's Enrollment Committee. The contention was that Alto, Sr. was the adoptive son of Jose Alto and Maria Duro, not their biological child, and therefore did not have the requisite degree of Indian blood to be enrolled as a member of the Band.[3] The Committee voted to disenroll Alto, Sr.'s descendants, and, after notifying the Altos, requested that the BIA Regional Director approve its disenrollment decision on the basis of the new evidence. *See* 25 C.F.R. § 48.5(b) (1960).

When the Regional Director denied the request, the Band appealed his decision to the Assistant Secretary–Indian Affairs. The Assistant Secretary reversed the decision of the Regional Director, issuing the 22-page 2011 Disenrollment Order challenged in this suit. Making his own findings of fact, the Assistant Secretary concluded that, applying the Band's membership criteria set forth in the 1960 Regulations, the Altos' names must be deleted from the Band's membership rolls because enrollment was based on inaccurate information regarding Marcus Alto, Sr.'s blood lineage.

The Altos thrice sought reconsideration of the Assistant Secretary's decision. After receiving no response, they filed the instant suit.

---

[3] The U.S. District Court for the Southern District of California dismissed two previous challenges to the BIA's approval of the Altos' enrollment, citing various bars to litigation, including *inter alia*, standing, statute of limitations, and compulsory joinder. *See* Order Granting Defendant's Motion to Dismiss Complaint, *Caylor v. BIA*, No. 03-cv-1859 (S.D. Cal. Apr. 22, 2004); Order Granting Defendants' Motion to Dismiss, *Atilano v. BIA*, No. 05-cv-1134 (S.D. Cal. Dec. 1, 2005).

## B.  The Federal Litigation

The Altos sued the Assistant Secretary and other federal officials, all in their official capacities,[4]  and moved concurrently for a temporary restraining order and preliminary injunction.  The complaint did not name the Band as a defendant.

The Altos' initial pleadings describe four claims for declaratory and injunctive relief.[5]  The first three claims seek the court's invalidation of the 2011 Disenrollment Order due to various alleged errors in the agency's decisionmaking. Specifically, the first claim asserts that the 1995 decision of the Assistant Secretary, upholding Marcus Alto, Sr.'s membership in the Band, precluded the Assistant Secretary's 2011 Disenrollment Order under the doctrine of res judicata; the second contends that the Assistant Secretary's decision violated the Altos' rights to procedural due process; and the third seeks reversal of the Disenrollment Order on the ground that it was arbitrary and capricious agency action.

---

[4]  For purposes of this opinion, we refer to all of the federal defendants collectively as "the BIA."

[5] The Alto descendants added a fifth claim for relief when they amended their complaint in March 2012, after the issuance of the preliminary injunction before us.  This fifth claim seeks: (a) an order directing the BIA and the Department of Interior to acknowledge that the Alto descendants were never removed from the Band's federally approved membership roll and are therefore entitled to per capita payments under the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721, and/or the Indian Civil Rights Act ("ICRA"), 25 U.S.C. §§ 1301–1303; and (b) an order directing the federal government to "exercise its fiduciary responsibility and protect the Plaintiffs' right to equal treatment in tribal membership benefits."  The district court has not yet ruled on any aspect of this claim, so we do not do so either.

The Administrative Procedure Act ("APA") provides a right to judicial review of all "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Although only the third claim is explicitly denominated as an APA claim in the complaint, the first three claims all involve challenges to the propriety of the BIA's decision. All three may therefore be fairly characterized as claims for judicial review of agency action under the APA, 5 U.S.C. §§ 701–706. *See Skinner v. Switzer*, 131 S. Ct. 1289, 1296 (2011) ("[U]nder the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory."); *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990) (holding that a plaintiff "is not required to state the statutory or constitutional basis for his claim, only the facts underlying it").

Alleging that the BIA has failed to fulfill its fiduciary duty to protect their interests, the fourth "cause of action" requests a preliminary injunction to "preserv[e] the [Altos'] status quo" rights and benefits. As elaborated in their motion for a preliminary injunction, the Altos sought a court order prohibiting the removal of enrolled Alto descendants from the Tribe's membership rolls and compelling the BIA, pending resolution of this suit, to order the Band to provide the Altos with continued rights and benefits of tribal membership (including access to health care, participation in tribal governance decisions, and disbursements of tribal gaming revenues).

Soon after the filing of the initial complaint, the Band moved to appear specially as a necessary party and sought dismissal of the suit under Federal Rule of Civil Procedure

12(b)(7) for inability to join a required party under Rule 19.[6] Joinder was barred, the Band maintained, because of tribal sovereign immunity.

The district court declined to dismiss the action, reasoning that complete relief could be afforded absent the Tribe. The court then granted the Altos' request for a preliminary injunction, holding that the Altos had raised substantial questions going to the merits of their res judicata and arbitrary and capricious decisionmaking claims; that they were likely to suffer irreparable harm due to the loss of access to rights and benefits associated with tribal membership; and that the balance of equities tipped sharply in their favor. The preliminary injunction forbid the BIA from removing the Altos from the Band's membership roll or taking any further action to implement the January 2011 Disenrollment Order pending completion of the litigation. The injunction also required the Assistant Secretary to issue interim orders directing the Band to: allow the Altos access to voting rights, meetings of the Band's council, and Indian Health Service ("IHS"); make per capita distributions to the Altos of gaming revenue for the duration of the lawsuit; and escrow the juvenile Altos' per capita trust funds, "to the same extent as was required during the pendency of the administrative proceedings and before the issuance of the January 28, 2011 [disenrollment] order."

The following month, the Assistant Secretary issued a Memorandum Order and Report of Compliance with the Preliminary Injunction. The Memorandum Order began by

---

[6] Following stylistic amendments enacted in 2007, Federal Rule of Civil Procedure 19 no longer refers to "indispensable" parties, but instead uses the term "required party." We do so as well.

explaining that, in the Assistant Secretary's view, he lacks authority to "compel the Band to comply with all aspects of the orders, exactly as phrased by the court." Accordingly, the Order "*advise[d]*" the Band that denying the Altos voting rights "shall be recognized as a denial of [their] due process rights, and will not be recognized by the Department." It "*notif[ied]*" IHS and the Band that the Altos are eligible for health services and that the Assistant Secretary "*expect[s]*" IHS and the Band to comply with regulations regarding the provision of those services. And finally, the order "*advised*" the Tribe that denying distribution of per capita payments to members "would constitute a violation of the Band's Revenue Allocation Plan (RAP)" and "that while this order is in effect, the Band *may* place all per capita distributions to the Alto descendants (including minors) into an escrow account created for this purpose. If the Alto descendants ultimately prevail in this litigation, the Band *must* distribute the funds in the escrow account to the Alto descendants, including distribution to the minors' trust fund as set forth in the Band's approved RAP."

The Alto descendants, objecting to the Memorandum Order as noncompliant with the preliminary injunction, moved the district court to compel the BIA's compliance with the portion of the preliminary injunction that required the agency *to direct* the Band to pay per capita gaming revenues to the Altos for the duration of the lawsuit. The district court denied the objections and motion to compel compliance, but did not formally amend the injunction to reflect the BIA's concerns about the scope of the Secretary's authority.[7]

---

[7] We discuss the scope of the injunction in more detail in Part II.B.

Once the preliminary injunction was in place, the Band sought and was granted the right to intervene, without waiving its sovereign immunity, for the limited purpose of filing jurisdictional motions.  The Band then moved to dissolve the injunction for lack of jurisdiction.  Its bases for that request were, first, the assertion that the court's preliminary injunction order depended on jurisdictionally impermissible interpretations of tribal law; and, second, that the preliminary injunction order subjects the Band to "substantial inequities," by providing relief running against the Band's self-governance and property interests.   In addition, the Band renewed its earlier motion to dismiss the suit under Rule 12(b)(7), for inability to join a Rule 19-required party, and under Rule 12(b)(1), for lack of subject matter jurisdiction.

The BIA objected to the Band's motion in part, arguing that the Band is not a required party for the Altos' first three causes of action.  The agency agreed with the Band, however, that the court lacked subject matter jurisdiction over the fourth and fifth causes of action.

Citing the lack of any indication by the BIA that "it could not make efforts to preserve the status quo pending resolution of the merits of [the Altos'] claims under the APA," the district court refused to dissolve the preliminary injunction. The court proceeded, for purposes of ruling on the motion to dismiss, to bifurcate the Altos' first three causes of action from the last two.  Reiterating its earlier decision denying the Tribe's motions to dismiss the first three claims on federal question or Rule 19 grounds, the court delayed adjudication of the motions to dismiss with regard to claims four and five, citing: (1) uncertainties regarding the Altos' ability to demonstrate subject matter jurisdiction over their fourth and

fifth claims for relief; (2) skepticism about the court's ability to proceed to the merits of those claims in the Band's absence; and (3) the possibility that a decision upholding the Disenrollment Order would moot the fourth and fifth claims.

The Tribe timely appealed both the refusal to dissolve the injunction and the denial of its motions to dismiss.

## II. DISCUSSION

### A. The Present Challenge to the Preliminary Injunction

We begin by clarifying the scope of the challenge before us. The issuance of the preliminary injunction was not appealed by either original party to the suit. And neither the Altos nor the enjoined entity, the BIA, ask this court to dissolve the injunction or modify its scope. Rather, the Band, the intervenor in this action for limited purposes, appeals from the district court's refusal to dissolve the injunction and to dismiss the case.

We have jurisdiction to review a district court's refusal to dissolve a preliminary injunction. *See* 28 U.S.C. § 1292(a)(1). Typically, "[a] party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). That requirement presumes that the moving party could have appealed the grant of the injunction but chose not to do so, and thus that a subsequent challenge to the injunctive relief must rest on grounds that could not have been raised before. *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 911 F.2d 363, 365 (9th Cir. 1990).

Here, however, where the Band was permitted to intervene only after the issuance of the injunction and only for the limited purpose of filing jurisdictional motions, the usual limitation on motions to dissolve injunctions is inapposite.   The Band, as a non-party, had no prior opportunity to challenge the grant of the injunction.  And it does not challenge the substance of the district court's analysis as to whether injunctive relief was warranted. Instead, consistent with the limited purposes for which it was permitted to intervene, the Band sought dissolution of the injunction on "jurisdictional" grounds.

On this appeal, therefore, we do not consider "the propriety of the underlying order."   *Sharp*, 233 F.3d at 1169–70.  To prevail on the issues that the Band can and does raise, the Band must show that the district court erred by applying an erroneous legal standard in determining either (1) that it had subject matter jurisdiction to adjudicate the Altos' claims and grant preliminary injunctive relief or (2) that it was proper to proceed in the Band's absence.  *See Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1126 n.7 (9th Cir. 2005).

## B.  Scope and Substance of the Claims and the Injunctive Relief

To review those issues, we must first clarify the scope of the injunctive relief granted and the claims on which it rested.

In assessing whether injunctive relief was warranted, the district court analyzed the Altos' likelihood of success only with respect to their first three causes of action, based on res judicata, due process, and arbitrary and capricious agency action.  The court did not discuss the merits of the fourth

claim, related to the BIA's fiduciary duty and failure to act to protect the Altos' access to tribal rights and benefits. The harm alleged in the Altos first three claims stemmed from purported errors in agency decisionmaking.

Typically, a preliminary injunction issued regarding APA review of agency decisionmaking preserves the court's jurisdiction to grant complete relief by simply suspending the implementation of challenged agency action pending full court review. *See, e.g.*, *City of San Diego v. Whitman*, 242 F.3d 1097, 1098 (9th Cir. 2001). The original injunction issued in this case tracked the sort of preliminary relief ordinarily available in APA cases insofar as it "restrained and enjoined" the BIA, "for the duration of this lawsuit from removing [the Altos] from the San Pasqual Tribe's membership roll and from taking any further action to implement the [challenged Disenrollment Order.]"

The remainder of the original preliminary injunction, paragraphs two through five, went further. It compelled the BIA to take action to effect temporary restoration of the Altos' access to tribal rights and benefits.

Recognizing that the breadth of the district court's order was questionable, the BIA issued a Memorandum Order and Report of Compliance that, in operative effect, treats the district court injunction as only suspending the implementation of the Disenrollment Order pending plenary review of the agency's action. While it addresses the impact of a suspension of the Disenrollment Order on the Altos' rights and benefits vis-a-vis the Band, the Memorandum Order—except in one respect we discuss later—did not *command* the Tribe to take any particular steps pertaining to the Altos' membership status. The legal obligations to which

the Memorandum Order refers stem not from the coercive power of the court or from the BIA's authority over the Band, but rather from separate federal laws and regulations, as well as from tribal governing documents. *See, e.g.*, 42 C.F.R. Part 136 (establishing general principles and program requirements for the Indian Health Service); Indian Civil Rights Act ("ICRA"), 25 U.S.C. §§ 1301–03; Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701–2721. Thus, although the Memorandum Order states that the Secretary is advising the Band "in compliance with the court's order," judicial authority is not the operative force behind any weight the Secretary's words may carry.

Although asked to do so after the Secretary issued his Memorandum Order, the district court did not compel the BIA to comply with the injunction as originally issued. By denying the Altos' request to order the Secretary to provide relief beyond that reflected in the Memorandum Order, the court acceded to the BIA's limited implementation of the preliminary injunction. In practical effect, the district court's acquiescence in the Secretary's partial compliance with the injunction clarified the scope of the court's order. Accordingly, the operative injunction, and the one subject to our review, encompasses only the suspension of the implementation of the Disenrollment Order, which according to the BIA's Memorandum Order, will have certain impacts on the Altos and the Band.

The Band contends that even the suspension of the Disenrollment Order, as supplemented by the Memorandum Order, is beyond the court's jurisdiction, because the Memorandum Order requires the Band to treat the Altos as members and to provide them with the attendant rights and benefits. The text of most of the Memorandum Order,

however, does not substantiate those concerns. Disapproving the portions of the Memorandum Order that "advise" and "notify" the Band of the implications of temporarily restoring the Altos' membership would have no effect on the Band's legal rights and obligations vis-a-vis the Altos during the pendency of this suit. At this juncture, we therefore need not, and do not, decide some difficult questions posed by the injunction in its original formulation.

The one exception to the limited nature of the Memorandum Order is the portion implementing the injunction that states: "If the Alto descendants ultimately prevail in this litigation, the Band *must* distribute the funds in the escrow account [if one is created for the purpose of holding all per capita gaming revenues distributed to the Altos while this suit is pending] to the Alto descendants, including distribution to the minors' trust fund as set forth in the Band's approved RAP." The injunction as a whole, however, provides only *preliminary* relief, while the language just quoted specifies what is to happen not now, but "[i]f the Alto descendants ultimately prevail." This coercive directive therefore does not simply implement the court's order preserving the status quo *pending* its review of agency action.

We shall remand for the purpose of allowing the district court formally to clarify the original injunction to conform to the understanding of the now-operative injunction we have just articulated—namely, as suspending the Disenrollment Order while this suit is pending and as directing the BIA to implement that suspension by advising the parties of its impact. The part of the Memorandum Order mandating distribution of escrowed funds if the Altos ultimately prevail goes beyond that limited role, and so should not be approved in the revised injunction.

The Band's jurisdictional arguments, if accepted, would invalidate the injunction even as so clarified. We therefore do not await the clarification but address the Band's arguments now.

## C. Subject Matter Jurisdiction

The Band moved both to dissolve the preliminary injunction and to dismiss claims one through three on the ground that this case presents no federal question. Its argument is that as the BIA's disenrollment decision turned solely on questions of tribal law and governance, there is no jurisdiction under the APA. We disagree.

### 1. The Motions to Dissolve and to Dismiss

As we have stated, we have jurisdiction to review the district court's refusal to dissolve the injunction. 28 U.S.C. § 1292(a)(1). We typically would not have jurisdiction on interlocutory appeal to review the district court's concurrent ruling on the Band's motion to dismiss under Rule 12(b)(1). Here, however, the basis asserted for dissolving the injunction is lack of subject matter jurisdiction, the same issue that underlies the Band's appeal of the denial of its motion to dismiss claims one through three for failure to state a federal question. *See Meredith v. Oregon*, 321 F.3d 807, 814 (9th Cir. 2003). So our "resolution of the issue properly raised on interlocutory appeal"—dissolution of the injunction— "necessarily resolves" the proper resolution of the motion to dismiss. *Id.* (internal quotation marks omitted). As the two issues both turn on the same jurisdictional analysis, review of the denial of the motion to dismiss claims one through three for lack of subject matter jurisdiction is properly "pendent" to our review of the dissolution motion. *Id.*

"We review the district court's ruling on subject matter jurisdiction *de novo*." *Chilkat Indian Vill. v. Johnson*, 870 F.2d 1469, 1470–71 (9th Cir. 1989).

### 2. The Propriety of Agency Action is a Federal Question

The central issue in this suit concerns tribal membership and its attendant rights and privileges. Federal courts generally may not interfere with tribal enrollment decisions, "[g]iven the often vast gulf between tribal traditions and those with which federal courts are more intimately familiar . . . ." *Santa Clara Pueblo*, 436 U.S. at 72 n.32 (citations omitted). Because "[o]rdinarily[] federal courts lack jurisdiction to consider an appeal from the decision of an Indian Tribe to disenroll one of its members," *Jeffredo v. Macarro*, 599 F.3d 913, 917 (9th Cir. 2010), we have regularly declined to exercise jurisdiction over cases in which individuals are seeking an order mandating BIA involvement in tribal enrollment decisions.

*Lewis v. Norton*, for example, rejected the plaintiffs' effort to "do an end run around tribal immunity" by asking the court to order the Department of Interior to decide in the first instance whether they should be enrolled as members and afforded a share in tribal gaming revenues. 424 F.3d at 963. To adjudicate such an action would require the court to evaluate the merits of the plaintiffs' claim to membership under tribal law—in effect, to review the tribe's own determination and intervene in its actions vis-a-vis its own members. *See Alvarado*, 509 F.3d at 1016.

Here, however, the Altos do not ask the federal court to decide *ab initio* whether they meet the Band's enrollment

criteria. Rather, they seek review under the APA's arbitrary and capricious standard of the Assistant Secretary's action in issuing the 2011 Disenrollment Order. And that action was triggered by the Band's own request, not that of the putative tribal members.

We have previously assumed, without expressly deciding, that we have jurisdiction to review agency action under the APA even when the agency applies tribal law. For example, *Moapa Band of Paiute Indians v. U.S. Department of Interior*, 747 F.2d 563, 565–66 (9th Cir. 1984), applied APA standards to review the Secretary of the Interior's rescission of a tribal ordinance, pursuant to authority granted to him by the tribal constitution, without discussing federal question jurisdiction. Similarly, *Baciarelli v. Morton*, 481 F.2d 610, 612 (9th Cir. 1973) (per curiam), applied APA standards to review the Secretary of the Interior's reinstatement of a tribal council's enrollment decision, without discussing jurisdiction. These cases are not dispositive, because the present jurisdictional issue was not squarely addressed. *See Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1363 (9th Cir. 1998). But the cases are persuasive authority that the exercise of jurisdiction here is proper.

We said a bit more on the subject recently in *Cahto Tribe*: "We have jurisdiction to review final agency action, 5 U.S.C. § 704, and the BIA's 2009 decision was final for the Department of the Interior." 715 F.3d at 1228 (citation omitted).[8] Although *Cahto Tribe* asserted this court's

---

[8] The issue in *Cahto Tribe* was whether the BIA had jurisdiction, under the tribe's governing documents, to review an individual's appeal from a tribal disenrollment decision. 715 F.3d at 1226–29. The tribe in that case

jurisdiction to review, under the APA, the BIA action challenged in that suit, it did not explain why that jurisdiction can extend to BIA action that rests on tribal law.**⁹**  We take the opportunity to do so now.

---

contended that its Articles of Association do not provide for an appeal of a disenrollment decision to the BIA.  We agreed.  The Band has made no such contention here—unsurprisingly, as it was the party that appealed to the BIA.  As the BIA's authority to review the disenrollment decision of the Band's membership committee is not in dispute, we agree with the parties that the BIA had jurisdiction to issue the challenged Disenrollment Order.

**⁹** Consistent with *Moapa Band*, *Baciarelli*, and *Cahto Tribe*, other circuits have adjudicated APA causes of action in cases concerning Indian affairs.  The Eighth Circuit, for example, asserted jurisdiction over the BIA's decisions whether to recognize tribal governing bodies following tribal elections, even though the recognition decision ultimately turns on tribal law.  *See Runs After v. United States*, 766 F.2d 347, 351 (8th Cir. 1985); *Goodface v. Grassrope*, 708 F.2d 335, 339 (8th Cir. 1983).  The court was careful, however, to limit the scope of federal jurisdiction to the propriety of the BIA's action under the APA, not the soundness of the BIA's decision under tribal law: "[The] resolution of such disputes involving questions of interpretation of the tribal constitution and tribal law is not within the jurisdiction of the district court."  *Runs After*, 766 F.2d at 352 (citing *Grassrope*, 708 F.2d at 338–39 & n.4).

The Second Circuit similarly implied that federal jurisdiction lies where plaintiffs seek review of an agency decision concerning Indian affairs.  *Shenandoah v. U.S. Department of Interior*, 159 F.3d 708 (2d Cir. 1998), explained that a federal court lacks jurisdiction over an issue of tribal law "*in the absence of* an initial determination by the [BIA]," implying that where there is such an agency determination, even an issue that involves the application of tribal law may properly come before a federal court.  *Id.* at 712 (emphasis added) (citing *Grassrope* and *Runs After*).  And the Federal Circuit has noted that, according to the Interior Board of Indian Appeals, "[d]ecisions of the BIA made at the level of Assistant Secretary or above, are apparently reviewable in district court." *Kaw Nation v. Norton*, 405 F.3d 1317, 1325 n.10 (Fed. Cir. 2005).

Here, the Assistant Secretary issued the challenged Disenrollment Order in his official capacity as a manager of Indian affairs under 25 U.S.C. § 2, and in response to the Band's appeal. Current federal regulations, codified at 25 C.F.R. §§ 62.1–62.12, provide procedures for "filing and processing of appeals from adverse enrollment actions by [BIA] officials," § 62.2, such as the Regional Director's decision the Band appealed here, and expressly permit tribal committees to file appeals, *see* § 62.4(b), as the Band's committee did here. Those regulations make clear that the challenged Disenrollment Order is "final agency action" within the meaning of the APA, 5 U.S.C. § 704. *See* § 62.11.

Moreover, the Assistant Secretary's resolution of the enrollment dispute was consistent with the authority vested in him by Article III, section 2 of the Band's Constitution. The 1960 Regulations specifically required the Secretary to approve the deletion of individuals members' names from the Band's roll, *see* 25 C.F.R. § 48.14(d) (1960). So the Band's current Constitution, which expressly incorporates those regulations, does so as well. And, by reason of that same incorporation, the Secretary's decision is not "committed to agency discretion by law," 5 U.S.C. § 701(a)(2). Rather, the Secretary must apply the tribe's own enrollment criteria, and is required to identify the information relied upon in reaching his decision. *See* 25 C.F.R. §§ 62.10–62.11.

The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *Darby v. Cisneros*, 509 U.S. 137, 146 (1993) (quoting 5 U.S.C. § 702). APA § 704, in turn, specifically provides for judicial review of final agency action "for which there is no other adequate

remedy in a court." 5 U.S.C. § 704. As these provisions reflect, Congress's understanding in passing the APA was that "judicial review should be widely available to challenge the actions of federal administrative officials." *Califano v. Sanders*, 430 U.S. 99, 104 (1977). The APA therefore creates a "strong presumption that Congress intends judicial review of administrative action." *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986); *see also INS v. St. Cyr*, 533 U.S. 289, 298 (2001).

That the substantive law to be applied in this case is tribal law does not affect our jurisdiction over an APA challenge to the BIA's decision. "[I]t is common ground that if review is proper under the APA, the District Court ha[s] jurisdiction under 28 USC § 1331." *Bowen v. Massachusetts*, 487 U.S. 879, 891 n.16 (1988); *see also Sharkey v. Quarantillo*, 541 F.3d 75, 83–84 (2d Cir. 2008) (holding that § 1331 confers jurisdiction over a suit that "arises under" a "right of action" created by the APA); *Runs After*, 766 F.2d at 351 (citing *Grassrope*, 708 F.2d at 338). The federal question for § 1331 purposes is whether the BIA violated the APA; that it is claimed to have done so in a case involving application of tribal law does not matter, any more than it would matter to § 1331 jurisdiction over an APA case involving an issue of state law.

*South Delta Water Agency v. U.S. Department of Interior, Bureau of Reclamation*, 767 F.2d 531 (9th Cir. 1985), for example, affirmed § 1331 jurisdiction to review, under the APA, the federal government's operation of a water project in a manner that allegedly violates state law. That case reasoned that "[s]tate law . . . adequately constrains the federal defendants' rights by providing 'law to be applied,'" under 5 U.S.C. § 706, so "therefore, review is proper under

the APA." *Id.* at 539. Similarly, here, the Band's Constitution, and the 1960 Regulations incorporated therein, constrain the Secretary's actions by providing the "law to be applied," such that review under the APA is proper.

The Altos' first three causes of action all concern the manner in which the Assistant Secretary exercised his authority to review the Band's enrollment determination. Claims one through three therefore both seek review of final agency action and raise a federal question under the APA, over which we have jurisdiction.

In sum, we have jurisdiction over the Altos' challenges to the BIA's determination of the tribal enrollment decision. The district court properly declined to dissolve the injunction and to dismiss the case on subject matter jurisdiction grounds.

## D.  Rule 19 Required Party Analysis

We turn next to the Band's alternative contention—that it is a required party with regard to claims one, two, and three, so that preliminary injunctive relief as to those claims could not be granted in its absence.

Joinder is not itself jurisdictional. *See Wilbur v. Locke*, 423 F.3d 1101, 1106–07 (9th Cir. 2005), *abrogated on other grounds by Levin v. Commerce Energy, Inc.*, 130 S. Ct. 2323 (2010). In this case, however, joinder of the Band, if required, would in turn raise sovereign immunity questions regarding the propriety of any adjudication of the Altos' claims. If the Band is a required party for the causes of action underlying the injunction, then the propriety of the relief granted by the district court depends, first, on whether the Band's joinder would be precluded by tribal sovereign

immunity, which the Band has invoked, *see, e.g.*, *Maxwell v. Cnty. of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013); and second, if so, whether the court can "in equity and good conscience" proceed to adjudicate those claims without the Band. *See* Fed. R. Civ. P. 19(b); *see also Wilbur*, 423 F.3d at 1114–15 (applying the Rule 19(b) factors to a sovereign tribe).

Moreover, the Rule 19 inquiry would, if resolved in the Band's favor, result in dissolving the injunction. There would then be no likelihood of success on the merits. Yet, the Band had no opportunity fully to litigate that issue until permitted to intervene for limited purposes. Thus embedded in the Rule 19 issue in this case is a quasi-jurisdictional issue—sovereign immunity—as to which the affected party would ordinarily be entitled to appeal denial of a motion to dismiss. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (citing *Phaneuf v. Republic of Indon.*, 106 F.3d 302, 304 (9th Cir. 1997)); *Doe v. Holy See*, 557 F.3d 1066, 1074 (9th Cir. 2009) (per curiam). Review of the Band's Rule 19 arguments as they pertain to the claims covered by the preliminary injunction is therefore properly before us.

We review the district court's denial of the Band's Rule 19 motion for abuse of discretion, but review the legal conclusions underlying that determination *de novo*. *Salt River Project Agric. Improvement & Power Dist. v. Lee*, 672 F.3d 1176, 1179 (9th Cir. 2012); *see also Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004).

The first step in compulsory joinder analysis is to determine whether the Band is a required party to the action.

Joinder of the Band is "required" if either: (1) the court cannot accord "complete relief among existing parties" in the Band's absence, or (2) proceeding with the suit in its absence will "impair or impede" the Band's ability to protect a claimed legal interest relating to the subject of the action, or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(A)–(B); *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992). We examine each factor in turn. Only if we determine that the Band is a required party do we proceed to the second Rule 19 inquiry: whether joinder is feasible, or is barred by sovereign immunity. Finally, only if joinder is impossible must we determine whether, in "equity and good conscience," the suit should be dismissed. *See* Fed. R. Civ. P. 19(a)–(b); *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779–80 (9th Cir. 2005); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002) (quoting *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991)); *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). This determination is necessarily fact- and circumstance-specific. *Confederated Tribes*, 928 F.2d at 1498.

As will appear, we resolve the Rule 19 question at step one.

### 1. Complete Relief

Complete relief "is concerned with consummate rather than partial or hollow relief as to those already parties, and with precluding multiple lawsuits on the same cause of action." *Disabled Rights*, 375 F.3d at 879 (citations and

internal quotation marks omitted). To be "complete," relief must be "meaningful relief *as between the parties*." *Id.* (emphasis added).

Ruling for the Altos on any or all of their first three claims would mean vacating the Disenrollment Order and, unless determined to be barred by res judicata (as the Altos maintain in their first claim for relief), remanding to the BIA for redetermination of the Altos' enrollment status. That relief is "meaningful" as between the Alto descendants and the BIA, even if it does not bind the Tribe directly.

In several past cases involving Rule 19 motions by Indian tribes, we have held it impossible to afford complete relief because the court's judgment would not bind the absent tribe. *See, e.g.*, *Dawavendewa*, 276 F.3d at 1155–56; *Confederated Tribes*, 928 F.2d at 1498. In those cases, however, the injury complained of was a result of the absent *tribe's* action, not only or principally that of the named agency defendant. Such is not the case here with respect to the Altos' first three causes of action.

In *Dawavendewa*, for example, the plaintiff challenged a provision of a lease agreement between the defendant power company and the Navajo Nation, the lessor of the land on which the company operated a facility. *See* 276 F.3d at 1153–54. The provision required the power company to give members of the Navajo tribe preferential treatment in hiring. *Id.* at 1153. We held that the Navajo Nation was a necessary party to the suit because the court could not assure the plaintiff his requested relief—employment by the defendant—in the Nation's absence. Even if the court ruled in the plaintiff's favor and enjoined the defendant–lessee from applying the challenged lease condition, the tribe could

still "move to enforce its rights under the lease and ultimately evict the employer from the reservation," *Disabled Rights*, 375 F.3d at 880 (discussing *Dawavendewa*), and insist on enforcing the provision with a new lessee. *See Dawavendewa*, 276 F.3d at 1155–58.

We reached a similar conclusion in *Confederated Tribes.* There, a group of Indian tribes brought suit to enjoin the federal government from negotiating with the Quinault Nation as the sole governing authority for the Quinault Nation Indian Reservation, requesting a declaratory judgment rejecting the Quinault Nation's exclusive governing status. 928 F.2d at 1497. But the plaintiffs did not name the Nation as a party. We concluded that joinder of the Quinault Nation was necessary because a judgment against the federal defendants would not bind the Nation, which could continue to "assert sovereign powers and management responsibilities over the reservation," the very practice that prompted the plaintiffs' complaint. *Id.* at 1498.

Here, in contrast, the injury complained of in the first three causes of action is the BIA's violation of the APA in carrying out a responsibility delegated to it by the Band, under the Band's own Constitution. The injury resulted from the Secretary's actions in ruling the Altos ineligible for tribal membership, not from the Band's prior actions with regard to the membership issue. Vacating or reversing the Disenrollment Order, and remanding if necessary for rehearing, would afford the Altos complete relief as to their first three causes of action. We may assume that the Band will then abide by the BIA's decision, as it is committed by its own Constitution to do, and will also, consistently with its Constitution, provide the Altos with the various requisites of membership.

Should that not occur, then questions regarding the availability of further BIA and judicial enforcement will arise. Some of those questions may be addressed, or anticipated, in the fourth and fifth causes of action in the Altos' First Amended Complaint. But as we have explained, those causes of action are not presently before us. As to the three causes of action that *are* before us, complete relief—that is, relief limited to that available in an APA cause of action, which is affirmation, reversal or remand of the agency action—can be provided between the parties. The practical implications of the Secretary's decision for the Altos' entitlement to tribal rights and benefits hinge not on any court order, but on the Band's legal duties to its members, under its own governing documents and applicable federal law.

In short, the Tribe's absence does not preclude "complete relief" as to the Altos' first three causes of action.

## 2. Protection of Legal Interests and Avoidance of Inconsistent Obligations

The second factor in determining whether an absent party's joinder is required "focuses on whether the absent party's participation is necessary to protect its legally cognizable interests or to protect other parties from a substantial risk of incurring multiple or inconsistent obligations because of those interests." *Disabled Rights*, 375 F.3d at 880; *see also* Fed. R. Civ. P. 19(a)(1)(B)(i) & (ii). The Band asserts interests in ensuring that only qualified individuals are enrolled and in maintaining its sovereignty over membership matters.

"As a practical matter, an absent party's ability to protect its interest will not be impaired by its absence from the suit where its interest will be adequately represented by existing parties to the suit." *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999). We consider

> three factors in determining whether existing parties adequately represent the interests of the absent tribes: whether 'the interests of a present party to the suit are such that it will undoubtedly make all' of the absent party's arguments; whether the party is 'capable of and willing to make such arguments'; and whether the absent party would 'offer any necessary element to the proceedings' that the present parties would neglect.

*Shermoen*, 982 F.2d at 1318 (quoting *Cnty. of Fresno v. Andrus*, 622 F.2d 436, 439 (9th Cir. 1980)). Applying those factors, we conclude that the Band's interest in limiting enrollment to qualified individuals is adequately represented by the BIA.

First, the United States shares with the Tribe an interest in defending the Assistant Secretary's Disenrollment Order, which granted precisely the relief the Tribe sought when it appealed to the BIA. The BIA has, to date, vigorously defended its Disenrollment Order on its merits. The Band has not presented any arguments that it would offer in defense of the Order which the BIA has not or would not make.

Second, consistent with its fiduciary responsibility to Indian tribes, the BIA has repeatedly avowed its intention and ability to represent the Band's interests with respect to the

APA aspects of the complaint, claims one through three. "[T]he federal government, including the Secretary, has a trust responsibility to the Tribe[]," as a trustee, which "obligates the Secretary to protect the Tribe['s] interests in this matter." *Daley*, 173 F.3d at 1168.

To be sure, conflicts can arise between the United States and an Indian tribe; when they do, the government cannot adequately represent the tribe's interests. *Id.* at 1167. But no such conflict has surfaced to this point in this case, as the district court, and now this court, has addressed only claims one through three in the Altos' complaint. The Assistant Secretary is defending the very order requested by the Band, which strips the Altos of their status as members of a federally recognized tribe. It cannot be said that the Secretary's trust obligations to the Band are at odds with the BIA's obligations to the Altos, whose membership the Band contests. As the BIA points out:

> [I]t is inherent in the process the Tribe created in its Constitution for the determination of membership in the Tribe, and the disenrollment of members whose enrollment was based on inaccurate information, that the final decision maker, the Secretary of the Interior, have fiduciary duties to both the Tribe and any Indians whose membership in the Tribe is in dispute. Since those duties did not deter the Tribe from making the Secretary of the Interior the final decision maker, they should not prevent him from defending his decision.

Finally, because the court's review of the Disenrollment Order is limited to the administrative record before the BIA, *see Fence Creek Cattle Co. v. U.S. Forest Serv.*, 602 F.3d 1125, 1131 (9th Cir. 2010), the Tribe could not offer new evidence in the judicial proceedings that would materially affect the outcome of claims one through three.

The Band also points to a dispute over the interpretation of tribal law as evidence that the United States cannot adequately represent its interests. Specifically, the Tribe maintains that the Disenrollment Order took immediate effect upon issuance, whereas the district court concluded (and the BIA initially argued) that the Altos would retain their membership status until the Secretary of the Department of Interior approves a revised membership roll for the Band, on which the Altos' names do not appear.[10] But the ability of the district court to afford complete relief on the Altos' first three claims does not turn on the resolution of this dispute.

If the Disenrollment Order is invalidated and the case remanded to the agency, then the effective date of the order will be of no consequence: the Altos would have remained members of the Tribe throughout the pendency of this dispute, and would be entitled to any attendant benefits as provided in the tribe's governing documents and applicable federal law. If, on the other hand, the Disenrollment Order is upheld, then questions concerning the date of the Altos' disenrollment can be addressed by the appropriate body or bodies, whether that be the Band alone or the Band with an appeal to the BIA. Finally, during the pendency of this litigation, under the district court injunction as clarified and

---

[10] The Altos' fifth cause of action seeks a declaratory judgment to this effect.

implemented by the Memorandum Order, any disenrollment date does not matter, as the Disenrollment Order is inoperative.

As to the Band's legal interest in maintaining sovereign control over membership issues, granting the relief requested in claims one through three—vacatur of the BIA's Order—would not undermine authority the Tribe would otherwise exercise.  The Tribe itself has delegated its authority over enrollment to the BIA.  *See* Const. of Band, art. III, § 2.  The Altos do not seek to alter the Band's rights vis-a-vis enrollment decisions.  Any attempt to do so in the Band's absence would clearly be impermissible.  *See Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1099 (9th Cir. 1994) (holding that a tribal council was a necessary party in a suit challenging the council's designation by the Secretary of Interior as the beneficiary of reservation property); *Confederated Tribes*, 928 F.2d at 1498–99 (holding the Quinault Nation a necessary party in a suit challenging the United States' recognition of the Nation as the sole governing authority of a reservation).  Rather, temporarily making the Disenrollment Order unenforceable is akin to staying removal in the immigration context; it "operates only upon the . . . proceeding itself," and does not impose a coercive order on any sovereign entity.  *Cf. Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam) (citation and internal quotation marks omitted).

In sum, complete relief can be afforded in the Band's absence as to the Altos' claims regarding the propriety of the Assistant Secretary's Disenrollment Order.  Because the Tribe is not a necessary party to the first three causes of action, the district court did not err in declining to decide whether tribal sovereign immunity bars the Band's joinder,

and if so, whether the action should be dismissed under Rule 19(b).

## E.  The Motions to Dismiss Claims Four and Five

The Band urges us to review the disposition of its motions to dismiss the fourth and fifth causes of action.  But as the district court made clear in the order under review, the clarified preliminary injunction does not rest on the Altos' fourth and fifth claims.[11]  Determining whether the court has subject matter jurisdiction over claims four and five, or whether the Band is a required party to those claims, is therefore not necessary to our review of the order refusing to dissolve the injunction. Consequently, our pendent jurisdiction does not extend to the Band's motions to dismiss those claims.

Nor do the Band's motions on claims four and five independently fall under the collateral order aspect of the final judgment rule.  The collateral order doctrine, first articulated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546–47 (1949), permits review as if they were final decisions of a "small class" of orders that: "(1) conclusively determine the disputed question; (2) resolve an important issue completely separate from the merits of the action; and (3) would effectively be unreviewable on appeal from a final judgment." *Rodriguez v. Lockheed Martin*

---

[11] To the degree that the Altos' fourth and fifth claims seek further relief beyond the clarified injunction on a different legal basis—namely, that the BIA has a fiduciary duty to ensure their access to tribal rights and benefits—the district court has not addressed that legal question, so there is no pendent issue before us.

*Corp.*, 627 F.3d 1259, 1264 (9th Cir. 2010) (citation, alterations, and internal quotation marks omitted).

The district court's order deferring adjudication of the Band's motion to dismiss the Altos' fourth and fifth causes of action does not satisfy the first of these criteria. "An order deferring a ruling is not conclusive." *Miller v. Gammie*, 335 F.3d 889, 895 (9th Cir. 2003) (en banc). Moreover, even if we were to construe the district court's deferred ruling on the motion regarding claims four and five as a decision declining to dismiss, as the Band asks us to do, we would not have jurisdiction to review that decision now. The denial of the Band's Rule 12(b)(1) motion to dismiss claims four and five for lack of subject matter jurisdiction is not appealable under the collateral order doctrine. *See Catlin v. United States*, 324 U.S. 229, 236 (1945); *Kwai Fun Wong v. United States*, 373 F.3d 952, 960 (9th Cir. 2004); *United States v. Atwell*, 681 F.2d 593, 594 (9th Cir. 1982) (citing *United States v. Layton*, 645 F.2d 681, 683 (9th Cir. 1981)).

Nor is the denial of the Band's Rule 12(b)(7) motion to dismiss those claims for inability to join a required party under Rule 19 among the narrow class of rulings collaterally appealable. One criterion for application of the collateral order doctrine is that the order "would effectively be unreviewable on appeal from a final judgment." *Rodriguez*, 627 F.3d at 1264. Courts can, and do, effectively review and correct Rule 19 decisions after final judgment, including by ordering dismissal at that point of the lawsuit, as otherwise appropriate, if a required party cannot be joined. *See, e.g.*, *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110–12 (1968) (considering a party's indispensability under Rule 19(b) on an appeal from a final judgment); *Universal Reinsurance Co. v. St. Paul Fire &*

*Marine Ins. Co.*, 312 F.3d 82, 87–89 (2d Cir. 2002) (same); *United States v. San Juan Bay Marina*, 239 F.3d 400, 405–07 (1st Cir. 2001) (same); *Gardiner v. V.I. Water & Power Auth.*, 145 F.3d 635, 640–43 (3d Cir. 1998) (same).  Although no Ninth Circuit opinion so states, other circuits have held that a Rule 19 determination is not immediately appealable, because it *can* be reviewed after a final judgment.  *See, e.g.*, *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1148 (10th Cir. 2011); *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n*, 471 F.3d 377, 383–84 (2d Cir. 2006); *Price v. J & H Marsh & McLennan, Inc.*, 493 F.3d 55, 63 (2d Cir. 2007). We find the reasoning of these cases persuasive, and so hold as well.

We recognize that the district court's denial of a motion to dismiss on grounds of sovereign immunity *is* immediately appealable under the collateral order doctrine.  *See Terenkian*, 694 F.3d at 1131 (citing *Phaneuf*, 106 F.3d at 304); *Holy See*, 557 F.3d at 1074.  Thus, had the Band been named as a party and then moved to dismiss the suit on grounds of tribal immunity, the district court's denial of such a motion or refusal to rule on it would be subject to interlocutory appeal. But that exception does not apply here.  The Band's immunity argument is of a second order; we would reach it only if we first reversed the district court's determination under Rule 19(a) that the Band was not a required party for claims four and five.  But as those claims are not presently before us, we have no reason to reach that question.  And unless and until the Band is determined to be a required party for purposes of claims four and five, the sovereign immunity issue does not arise.  The immunity issue regarding claims four and five is therefore premature, and we may not reach it, via the collateral order doctrine or otherwise.

In sum, we lack jurisdiction at this stage to review whether the Altos' fourth and fifth claims should be dismissed under either 12(b)(1) or 12(b)(7).

### III. CONCLUSION

The district court properly exercised subject matter jurisdiction over the Altos' claims challenging the agency's final action and correctly concluded that the Band is not a required party to the resolution of those claims. Accordingly, the Band has demonstrated no basis for dissolving the preliminary injunction presently in effect, as articulated in the BIA's Memorandum Order.

For the foregoing reasons, we **AFFIRM** the district court's denial of the Band's motion to dissolve the preliminary injunction as limited by the BIA's Memorandum Order, prohibiting the BIA from giving effect to the Disenrollment Order pending adjudication of this suit. But we **REMAND** to allow the district court formally to clarify the original injunction to conform with the understanding of the injunction we have described. We likewise **AFFIRM** the denial of the motion to dismiss claims one through three of the Altos' First Amended Complaint. Finally, we **DISMISS** for lack of jurisdiction the Band's appeal as to its motion to the dismiss claims four and five.

**AFFIRMED IN PART, DISMISSED IN PART, AND REMANDED.**