# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2502

_____

| | | |
|---|---|---|
| Maynard Bernard; Florine Bernard, | * | |
| | * | |
| Plaintiffs - Appellants, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| United States Department of the Interior; | * | |
| Secretary of Department of Interior; | * | |
| Board of Indian Hearings and Appeals; | * | |
| Great Plains Regional Director of the | * | |
| Bureau of Indian Affairs, | * | |
| | * | |
| Defendants - Appellees, | * | |
| | * | |
| Grady Renville, | * | |
| | * | |
| Defendant. | * | |

_____

Submitted: March 14, 2012
Filed: April 6, 2012

_____

Before MURPHY and GRUENDER, Circuit Judges, and ROSS,[1] District Judge.

_____

MURPHY, Circuit Judge.

_____

[1]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri, sitting by designation.

Maynard Bernard decided to develop some of the Indian trust land he owned on the Sisseton Wahpeton Reservation in a project planned with his cousin Grady Renville. Bernard and Renville consulted a Bureau of Indian Affairs (BIA) realty officer about how to proceed. She advised Bernard to sign a gift deed to convey the entire property to himself and Renville as joint tenants with the right of survivorship. The agency subsequently denied a request by Bernard and his wife Florine to set aside the deed. After an unsuccessful administrative appeal the Bernards brought an action in federal district court against the United States Department of the Interior (the Department) seeking review of the agency decision and money damages for breach of trust. The Bernards later amended their complaint to eliminate the damage claim and subsequently settled with Renville, who agreed to deed back some of the land. After the district court[2] affirmed the administrative decision and dismissed the Bernards' action, they moved to alter the judgment, seeking transfer of their damage claim to the Court of Federal Claims (CFC). The district court denied the motion, and the Bernards appeal. We affirm.

I.

Bernard owned approximately 45.5 acres of land held in trust by the United States for his benefit on the Sisseton Wahpeton Indian Reservation in South Dakota. Maynard and Florine Bernard are both members of the Sisseton Wahpeton Tribe. In 2004 Bernard entered into an agreement with his second cousin Renville to develop the section of Bernard's land that abutted Pickerel Lake and to share profits from the sale of individual lots. Renville was to provide the capital for this development.

---

[2]The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

Bernard obtained permission from the Sisseton Wahpeton Tribal Council to take the lakefront acres out of trust.[3]

Bernard and Renville met with realty officer Carol Jordan at the BIA office in Sisseton in April 2004. Bernard states that the purpose of the meeting was to make arrangements to have the land taken out of trust. Jordan stated at her deposition that she advised them to leave the land in trust status and wait to obtain a fee patent until development was completed in order to avoid tax consequences. She also suggested use of a gift deed so that Renville could "protect whatever monetary interest that he was going to be putting into the project." She further suggested a joint tenancy with the right of survivorship because the two men had verbally agreed that they would "take care of each other's families." Renville filled out a gift deed application for Bernard because he apparently had some vision problems.

The application stated that Bernard intended to gift convey 45.5 acres to himself and Renville in a joint tenancy with the right of survivorship. The reason listed for the conveyance was "joint business venture." The application also indicated that Bernard waived his right to an appraisal. He signed the application, and on April 20 Jordan brought a gift deed to the Bernards' house, where Maynard and his wife Florine both signed it. The BIA superintendent approved the deed in May 2004, and it was subsequently recorded.

Bernard contends that he had not understood that he gift deeded his land to Renville. He claims that Jordan misrepresented the effect of signing the deed and that he thought he was signing a mortgage. According to Bernard, Jordan never mentioned anything about a gift conveyance. Instead she assured him that the arrangement was temporary and that no deed would ever be filed. Jordan testified at

---

[3]Bernard originally requested permission to take out 10 acres; however a survey later revealed that the amount of lakefront land was approximately 17 acres.

her deposition that she told the Bernards that the gift conveyance was going to be a "temporary situation" because Renville had orally agreed to reconvey to Bernard the land not intended for development. Jordan also stated in an affidavit that she explained the nature of a joint tenancy and a right of survivorship to Bernard and Renville.

Several months after the deed was signed, the development plan fell apart. According to Bernard, his relationship with Renville deteriorated, the project "failed dismally," and Renville stopped working on it without relinquishing his interest in the land. Renville claims to have spent approximately $200,000 developing the land.

The Bernards allege that they did not receive a copy of the gift deed until June 2004, after the deed had already received final approval from the BIA superintendent. They wrote to the superintendent alleging that the agency had breached its fiduciary duty by misrepresenting the effect of signing the deed. The superintendent denied their request to set aside the deed, stating that he did not have the authority to do so. The Bernards appealed to the regional director, adding that the BIA had violated its own regulations in approving the gift deed. The regional director affirmed the decision not to rescind the deed, concluding that agency procedures had been followed, that Jordan had explained the nature of the gift conveyance, and that Jordan had observed that Bernard was "capable of understanding everything that was explained."

The Bernards appealed to the Interior Board of Indian Appeals (IBIA), which affirmed the regional director's decision. The Board concluded that no violation of agency regulations had occurred which might render the deed void. The Board did not reach the merits of the Bernards' breach of trust claims, stating that it had no authority to grant the requested relief of declaring the gift deed null and void based on an alleged breach of trust. See Maynard & Florine Bernard v. Acting Great Plains Reg'l Dir., 46 I.B.I.A. 28 (2007).

-4-

In October 2008 the Bernards brought this action against the Department seeking review of the IBIA's decision not to set aside the deed, as well as money damages for breach of "fiduciary duty and trust responsibility." The complaint alleged that the BIA had breached its fiduciary duty by failing to explain the effect of signing a gift deed, misrepresenting it as only a "temporary arrangement," and unduly influencing the Bernards to sign it. They asserted jurisdiction under the Administrative Procedure Act (APA), 5 U.S.C. §§ 701–706, as well as the Tucker Act, 28 U.S.C. § 1491(a)(1). The Tucker Act provides that the CFC has exclusive jurisdiction over non tort claims for money damages against the United States in excess of $10,000. Id.; See Weeks Const., Inc. v. Oglala Sioux Hous. Auth., 797 F.2d 668, 675 (8th Cir. 1986).

The Department moved to dismiss the Bernards' complaint in January 2009, arguing that the claim for money damages deprived the district court of jurisdiction under the APA and that the CFC had exclusive jurisdiction over claims against the United States for money damages in excess of $10,000. The Bernards amended their complaint in response, eliminating their request for money damages and the jurisdictional reference to the Tucker Act and adding Renville as a defendant. They subsequently clarified that they were "seeking APA review [of the IBIA decision not to set aside the deed] and not money damages" and acknowledged that any money damages claim "would be required to be brought in the [CFC]."

In February 2011 the district court ordered the Bernards and Renville to mediate their land dispute. They subsequently reached a settlement in which the parties agreed to split the proceeds from the sale of the 17 acres abutting the lake that had been intended for development, and Renville agreed to return the remaining acres to the Bernards. The Department of the Interior was not a party to the settlement agreement.

The district court affirmed the IBIA decision in March 2011, concluding that it was not arbitrary, capricious, an abuse of discretion, or otherwise contrary to the law. See 5 U.S.C. § 706(2)(A). It also concluded that since the BIA had not "passed upon any question of breach of trust responsibilities," administrative remedies had not been exhausted on those claims and it had no jurisdiction to consider them. The district court commented that "[n]o competent lawyer would have permitted the parties to proceed as they did," but that Jordan "did exactly what the plaintiffs requested and there is no evidence of the employee holding herself out as a lawyer or even a real estate agent." It stated that while establishing a joint tenancy was "certainly unwise and dangerous," it was unfortunately not an "unfamiliar situation where lay people undertake activities without legal advice . . . without foreseeing the trouble to come 'down the road'" and that the parties "expected lawyers and a court to unravel their casual and reckless doings." The district court entered an order dismissing the case.

The Bernards then filed a motion to alter the judgment under Federal Rules of Civil Procedure 59(e) and 60. They sought to have their money damages claim against the United States for breach of trust transferred to the CFC, citing the federal transfer statute, 28 U.S.C. § 1631. The district court denied the motion. It concluded that while transfer might be in the "interest of justice," the Bernards had not met the other requirements for transfer under § 1631 because they had abandoned their Tucker Act claim for money damages in 2009. Thus "there were no claims pending for money damages or for claimed breach of trust" at the time it had dismissed the action. It also noted that the six year statute of limitations for CFC claims "may well have expired," and that the Supreme Court's interpretation of 28 U.S.C. § 1500 in United States v. Tohono O'Odham Nation, 131 S. Ct. 1723 (2011), provided further support for the denial of the Bernards' motion. Section 1500 bars CFC jurisdiction when the plaintiff has a suit against the United States "for or in respect to" the same claim pending in another court.

The Bernards appeal the denial of the motion to alter the judgment, arguing that they had not abandoned their breach of trust claim, that neither the statute of limitations nor Tohono prevent transfer, and that transfer would be in the interest of justice.

## II.

We review the district court's denial of the Bernards' Rule 59(e) motion to alter the judgment for an abuse of discretion.[4] Twin City Constr. Co. of Fargo v. Turtle Mountain Band of Chippewa Indians, 911 F.2d 137, 139 (8th Cir. 1990). We will find an abuse of discretion only if the district court's judgment "was based on clearly erroneous factual findings or erroneous legal conclusions." Margolies v. McCleary, Inc., 447 F.3d 1115, 1125 (8th Cir. 2006) (citation omitted).

In their motion to alter the judgment the Bernards asked the district court to transfer their money damages claim to the CFC, noting that the six year statute of limitations would prevent them from simply refiling that claim there. See 28 U.S.C. § 2501. The transfer statute provides:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

---

[4]Although the Bernards' motion to alter the judgment cited both Rule 59(e) and Rule 60, their attorney stated at oral argument that the motion was intended under Rule 59(e), not Rule 60.

Id. The district court concluded the requirements for transfer under § 1631 were not met and denied the motion.

We conclude that the requirements for transfer under § 1631 were not met in this case. Several years before the district court entered its final judgment, the Bernards abandoned their claim for money damages under the Tucker Act by amending their complaint to eliminate all reference to that claim. They clarified several times that there was no longer a claim for money damages and acknowledged that they understood that any such claim had to be brought in the CFC. Because there was no money damages claim pending at the time the district court entered its final judgment in March 2011, there was no action which the district court could have transferred under § 1631. See In re Wireless Tel. Fed. Cost Recovery Fees Litig., 396 F.3d 922, 928 (8th Cir. 2005) ("[A]n amended complaint supercedes an original complaint and renders the original complaint without legal effect."); Rogers v. United States, 26 Cl. Ct. 1023, 1029 (1992) (court may not transfer claim under § 1631 if not alleged in complaint). The district court thus did not abuse its discretion in denying the Bernards' motion to alter the judgment.

The Bernards urge the court to look at the original complaint instead of the amended complaint to find that their money damages claim still existed for the purposes of transfer. They cite removal cases where a court ordered a party to amend a complaint or the decision to amend was "otherwise involuntary." In such cases the court then looks to the original complaint to determine whether removal to federal court was proper. E.g. In re Atlas Van Lines, Inc., 209 F.3d 1064, 1067 (8th Cir. 2000). The Bernards offer no authority indicating that the involuntariness exception to the amended complaint rule applies outside of the removal context, and we conclude that it is not applicable here.

Even if the money damages claim had still been pending at the time of dismissal, transfer in this case would have been prohibited by 28 U.S.C. § 1500. That

statute provides that the CFC "shall not have jurisdiction of any claim for or in respect to which the plaintiff . . . has pending in any other court any suit or process against the United States." The Federal Circuit has clarified that § 1500 prevents transfer to the CFC of a claim filed in the district court simultaneously with another claim which the statute considers to be the same. United States v. Cnty. of Cook, Ill., 170 F.3d 1084, 1091 (Fed. Cir. 1999). This is because the transfer statute directs that the transferred action "shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred." 28 U.S.C. § 1631. The Bernards do not dispute that their APA claim and their Tucker Act claim for money damages are "for or in respect to" the same claim for purposes of § 1500. See United States v. Tohono O'Odham Nation, 131 S. Ct. 1723, 1731 (2011) ("Two suits are for or in respect to the same claim, precluding jurisdiction in the CFC, if they are based on substantially the same operative facts, regardless of the relief sought in each suit."). Thus, even if the Bernards had not withdrawn their damage claim, transfer would not have been permitted because the APA claim would have been considered "pending" and § 1500 would have barred CFC jurisdiction. 170 F.3d at 1091.

We recognize that the facts of this case are troubling. Apparently on her own initiative, the BIA realty officer advised Bernard to sign a gift deed conveying half of his interest in his entire property to Renville in a joint tenancy with the right of survivorship. In addition she told Bernard that this would be only a "temporary" arrangement based on Renville's alleged oral assurances, and she permitted Bernard to waive appraisal of his land before the transfer. She also allowed Renville to fill out the gift deed application, apparently because Bernard's eyesight was so bad he could not do it himself.

The Bernards do not challenge the district court's decision on the merits of their APA claim, however, and they were not left completely without a remedy. Through a settlement with Renville, they received half of the proceeds from the sale of the

property originally intended for the joint venture and Renville deeded back the remaining acres.

## III.

We conclude that the district court did not abuse its discretion by denying the motion to alter the judgment to transfer the money damages claim to the CFC since the Bernards had withdrawn that claim several years before final judgment was entered. Accordingly, the judgment of the district court is affirmed.

_____