**Patrick HAMMOND III, Plaintiff,**

v.

**Sally JEWELL, Secretary of the U.S. Department of the Interior; Interior Board of Indian Appeals, U.S. Department of the Interior; Amy Dutschke, Regional Director, Pacific Regional Office, Bureau of Indian Affairs; Troy Burdick, Superintendent, Central California Agency, Bureau of Indian Affairs, Defendants.**

**CIV. NO. 1:15–00391 WBS SKO**

United States District Court, E.D. California.

Signed October 7, 2015

Jeff Reich, Shane Reich, Reich Law Firm, Fresno, CA, for Plaintiff.

Maureen E. Rudolph, U.S. Department of Justice, Washington, DC, for Defendant.

## MEMORANDUM AND ORDER RE: MOTION TO DISMISS

WILLIAM B. SHUBB, UNITED STATES DISTRICT JUDGE

Plaintiff alleges he was ousted from the leadership of the Picayune Rancheria of Chukchansi Indians Tribe in violation of tribal law and brought this suit against

numerous federal defendants seeking reinstatement to the Tribal Council. Presently before the court is defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6).

## I. *Factual and Procedural Background*

Plaintiff was elected to the Tribal Council of the Picayune Rancheria of Chukchansi Indians Tribe in December 2008. (Compl. ¶ 10.) After initially suspending plaintiff from the Tribal Council for alleged violations of the tribal Ethics Ordinance, the Tribal Council permanently removed him on June 17, 2011 after a hearing. (*Id.* ¶¶ 13–14.)

Following the December 3, 2011 election, three factions were embroiled in a power struggle over tribal leadership, resulting in legal disputes in the Tribal Court and even violence. (*Id.* ¶¶ 19–23.) Plaintiff was not a member of any of the factions and it does not appear that their leadership disputes were related to plaintiff's removal from the Tribal Council. Asserting conflicting claims of leadership, all three factions submitted contracts under the Indian Self–Determination and Education Assistance Act ("ISDEAA") to the Bureau of Indian Affairs ("BIA"). (*See id.* ¶ 23; Defs.' Ex. B. at 1 ("Feb. 11, 2014 BIA Decision") (Docket No. 16–2).)

The BIA Superintendent returned the contract requests from all three factions and concluded it would recognize the results of the disputed December 1, 2012 election. (Feb. 11, 2014 BIA Decision at 6.) All three factions appealed the Superintendent's decision and the BIA Regional Director affirmed the decision to return all three contract requests, but vacated the decision to recognize the results of the disputed election because the BIA did not have "the authority to determine which of the opposing factions['] interpretation of the Tribe's law is correct." (*Id.*) The Regional Director determined that "recognition of a government is essential for the purpose of contracting under the ISDEAA and that the BIA "will conduct business, on an interim basis, with the last uncontested Tribal Council elected December 2010." (*Id.*) The Regional Director did not identify plaintiff as a member of that Tribal Council because "[t]he record reflects that Nokomis Hernandez was appointed by the Tribal Council to replace Patrick Hammond, III." (*Id.* at 3 n.3.)

Two factions and plaintiff appealed that decision to the BIA Office of Hearings and Appeals and a two-judge panel concluded that exigent circumstances justified making the Regional Director's decision to recognize the 2010 Tribal Council "for government-to-government purposes" effective immediately. (Defs.' Ex. C at 5 ("Feb. 9, 2015 BIA Decision") (Docket No. 16-3).) Although plaintiff had appealed "the Regional Director's acceptance of his subsequent removal from the Council and replacement," the panel did not address the merits of that dispute in its February 9, 2015 decision. (*Id.* at 5 n.2.)

Plaintiff initiated this lawsuit, alleging he was "unethically and unconstitutionally removed from his position on the Tribal Council." (Compl. ¶ 15.) He further alleges that he attempted to seek help from defendants in resolving his allegedly wrongful removal, but defendants "failed to exercise their inherent authority to correct this manifest injustice and error." (*Id.* ¶ 17.) Plaintiff asserts claims for violations of (1) 42 U.S.C. § 1983 based on a denial of procedural due process; (2) the Indian Civil Rights Act ("ICRA"), 25 U.S.C. § 1302; and (3) the Administrative Procedure Act ("APA"), 5 U.S.C. § 706 *et seq.* He asks the court to vacate the February 11, 2014 and February 9, 2015 BIA decisions, declare that his removal by the

Tribal Council was invalid and void, and declare that he is a member of the Tribal Council. (*Id.* at 8–9.) Defendants now move to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) or, alternatively, for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6).

## II. *Discussion*

Rule 12(b)(1) authorizes a court to dismiss an action over which it lacks subject matter jurisdiction. When a party challenges the court's jurisdiction, the party invoking its jurisdiction bears the burden of proving that jurisdiction exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 376, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001), *abrogated on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010).

On a Rule 12(b)(6) motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929

(2007). This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a plaintiff pleads facts that are "merely consistent with a defendant's liability," it "stops short of the line between possibility and plausibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

### A. *Section 1983 and ICRA Claims*

██ "Internal matters of a tribe are generally reserved for resolution by the tribe itself, through a policy of Indian self-determination and self-government as mandated by the Indian Civil Rights Act." *Timbisha Shoshone Tribe v. Kennedy*, 687 F.Supp.2d 1171, 1185 (E.D.Cal.2009) (O'Neill, J.). A district court thus generally lacks jurisdiction to resolve matters of internal tribal governance.[1] *Id.* As the BIA recognized in its February 11, 2014 decision, "the determination of tribal leadership is quintessentially an intra-tribal matter raising issues of tribal sovereignty." (Feb. 11, 2014 BIA Decision at 6 (quoting *Hamilton v. Acting Sacramento Area Dir.*, 29 I.B.I.A. 122, 123, 1996 WL 165057, at *2 (Mar. 12, 1996))); *see also In re Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig.*, 340 F.3d 749, 763–64 (8th Cir.2003) (holding that the district court lacked jurisdiction to resolve an internal tribal election dispute); *see Timbisha*, 687 F.Supp.2d at 1185 (considering elections to be among the internal

---

1. There is an exception where a tribe's own governing documents vest federal agencies with ultimate authority over certain decisions. *Alto v. Black*, 738 F.3d 1111, 1115, 1123 (9th Cir.2013) (recognizing that the BIA had authority to decide a membership dispute where the tribe's own constitution required the BIA to approve the deletion of individual's names from membership). The Constitution of the Picayune Reservation does not vest the BIA with the authority to review internal tribal leadership disputes. (*See* Defs.' Ex. A (Constitution of the Picayune Reservation); *see also* Feb. 11, 2014 BIA Decision at 6 ("There is no provision in the Tribe's Constitution or federal law that provides the BIA with authority to determine which of the opposing factions['] interpretation of the Tribe's law is correct. ... ").)

affairs of the tribe that do not come within the purview of review by federal courts).

Here, plaintiff's § 1983 and ICRA claims are based on the allegation that his removal from the Tribal Council violated tribal law, and his prayer for relief asks the court to order that he be reinstated on the Tribal Council. Because plaintiff seeks "a form of relief that the federal courts cannot provide, namely, resolution of [an] internal tribal leadership dispute," the court lacks jurisdiction over his claims. *In re Sac & Fox Tribe*, 340 F.3d at 763; *see also Timbisha*, 687 F.Supp.2d at 1185 (holding that the plaintiff's claims were non-justiciable in federal court because they would require the court to resolve the parties' election dispute, an issue central to tribal self-determination and self-government). Accordingly, the court must grant defendants' motion to dismiss plaintiff's § 1983 and ICRA claims for lack of subject matter jurisdiction.[2]

### B. *APA Claim*

The APA permits a reviewing court to review a "final agency action," 5 U.S.C. § 704, and "hold unlawful and set aside actions, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). "The federal question for § 1331 purposes is whether the BIA violated the APA; that it is claimed to have done so in a case involving application of tribal law does not matter, any more than it would matter to § 1331 jurisdiction over an APA case involving an issue of state law." *Alto v. Black*, 738 F.3d 1111, 1124 (9th Cir.2013).

Under the APA, "[a] person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action *within the meaning of a particular statute*, is entitled to judicial review thereof." 5 U.S.C. § 702 (emphasis added). "Section 702 does not create substantive rights. There is no right to sue for a violation of the APA in the absence of a 'relevant statute' whose violation 'forms the legal basis for [the] complaint.' " *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Review*, 959 F.2d 742, 753 (9th Cir.1991) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 883, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

"Absent a statute with substantive standards, judicial review is precluded because there is no 'law to apply [and] "no meaningful standard against which to judge the agency's exercise of discretion." ' " *Eason Land Co., LLC v. Sec'y of U.S. Dep't of Interior*, No. 2:14–CV–00951–SU, 2015 WL 1538501, at *11 (D.Or. Apr. 7, 2015) (quoting *Or. Nat'l Res. Council v. Thomas*, 92 F.3d 792, 798 (9th Cir.1996) (alteration in original)); *see also Pub. Lands for the People, Inc. v. U.S. Dep't of Agric.*, 733 F.Supp.2d 1172, 1180 (E.D.Cal. 2010) ("A claim that an agency acted arbitrarily and capriciously for purposes of the APA cannot 'stand free of any other law.' Instead, the APA provides a mechanism for enforcing obligations arising under other authority." (quoting *Or. Nat'l Res. Council*, 92 F.3d at 798)).

Here, plaintiff's Complaint does not allege what statute provides the substantive standards to review the BIA's decision and appears to allege only a deficient, free-

---

**2.** Plaintiff's ICRA claim also fails because "ICRA does not operate against the federal government." *Cal. Valley Miwok Tribe v. Salazar*, 967 F.Supp.2d 84, 93 (D.D.C.2013); *see also* 25 U.S.C. § 1302(a)(8) ("No *Indian tribe* in exercising powers of self-government shall—... deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty or property without due process of law ...." (emphasis added).

standing claim that the BIA's decision was "arbitrary and capricious" in violation of the APA.

■ To the extent plaintiff relies on the Due Process Clause as the "standard against which to judge the agency's exercise of discretion," *Or. Nat'l Res. Council,* 92 F.3d at 798, this claim must fail. "To assert a procedural due process claim under the Fifth Amendment, [the plaintiff] must first establish a constitutionally protected interest. [The plaintiff] must have more than a unilateral expectation of it; instead, she must have a legitimate claim of entitlement." *Stanley v. Gonzales,* 476 F.3d 653, 660 (9th Cir.2007) (citing *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 569–70, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth,* 408 U.S. at 577, 92 S.Ct. 2701.

Here, the system of tribal leadership and plaintiff's ability and right to serve on the Tribal Council stem exclusively from the Constitution of the Picayune Reservation. (*See* Defs.' Ex. A at arts. VII, X (Constitution of the Picayune Reservation).) Plaintiff cannot plausibly allege that any federal or state statute or right gave him a legitimate claim of entitlement to his continued service on the Tribal Council. *Cf. Hoopa Valley Tribe v. Christie,* 812 F.2d 1097, 1102 (9th Cir.1986) (holding that even though a federal statute gives "Indians ... a preference for appointment to vacancies in the administration of services or functions affecting Indians," such as the BIA, the statute "did not create proprietary rights to their jobs").

Even assuming the BIA decisions could be challenged under the APA, plaintiff does not challenge the limited decision the BIA reached in this case. "The BIA, in its responsibility for carrying on government relations with the Tribe, is obligated to recognize and deal with some tribal governing body in the interim before resolution of [ ] election dispute[s]." *Goodface v. Grassrope,* 708 F.2d 335, 339 (8th Cir. 1983). In the decisions challenged in this case, the BIA acted within its limited authority to recognize tribal leadership on an interim basis for the limited purpose of government-to-government dealings. As the BIA explained, it lacked the ability to resolve the election disputes and expressly refrained from interfering with the tribe's sovereignty in that respect. (*See* Feb. 11, 2014 BIA Decision at 6 (recognizing that it "does not have the authority to determine the Tribe's permanent leadership"); Feb. 9, 2015 BIA Decision at 5.)

Plaintiff does not challenge the BIA's decision regarding whom to deal with in the interim for "government-to-government" purposes while the Tribe resolves its leadership disputes. Instead, plaintiff seeks review of the BIA's *refusal* to address the merits of his allegedly unlawful removal from the Tribal Council in violation of tribal law. (*See* Compl. ¶ 2 ("Review of the subject decision and subsequent determination to make that decision effective is sought insofar as said decision states that 1) the Tribal Council's removal of plaintiff from the Tribal Council on or about June 17, 2011, is valid action; 2) plaintiff is not a member of the Tribal Council pursuant to the election held on December 5, 2010, and; 3) plaintiff is not a member of the last undisputed Tribal council.").)

In *Goodface,* tribe factions similarly disputed a tribal election and the BIA refused to recognize either faction and indicated it

would "deal with both councils on a de facto basis." 708 F.2d at 337. The Eighth Circuit held that the BIA "acted arbitrarily and capriciously by effectively creating a hiatus in tribal government" and was "obligated to recognize and deal with some tribal governing body in the interim before resolution of the election dispute." *Id.* at 338–39. It further explained, however, that the district court "should not have addressed the merits of the election dispute" in reviewing the BIA's action and "overstepped the boundaries of its jurisdiction in interpreting the tribal constitution and bylaws and addressing the merits of the election dispute." *Id.* at 339.

█ Even if this court somehow interprets plaintiff's allegations as attacking the BIA's decision that plaintiff was not a member of the Tribal Council that it recognized for interim government-to-government relations and that the decision is subject to attack under the APA, the court could not assess plaintiff's claims without "interpreting the tribal constitution and bylaws and addressing the merits" of plaintiff's removal by the Tribal Council. Similar to the BIA, the court lacks jurisdiction to engage in this inquiry.[3] *Id.*

### C. Conclusion

In *Lewis v. Norton,* the Ninth Circuit observed that "[t]he plaintiffs of course did not sue the tribe directly, but filed this action against the federal agencies responsible for the regulation of tribal affairs, including gaming. They did so because they recognized that tribal immunity would create, at the least, a serious obsta-

cle." 424 F.3d 959, 963 (9th Cir.2005). The Ninth Circuit explained that the plaintiffs' "efforts to do an end run around tribal immunity must also fail" because "tribes, not the federal government, retain authority to determine tribal membership." *Id.* A plaintiff cannot simply sue the federal government in an attempt to avoid tribal immunity with respect to intra-tribal affairs. The Tribal Council removed plaintiff from his leadership position and plaintiff's avenue to challenge that action remains with the Tribe.

Accordingly, because the court lacks jurisdiction to hear plaintiff's § 1983 and ICRA claims and plaintiff fails to allege a cognizable claim under the APA over which the court could exercise jurisdiction, the court must grant defendants' motion to dismiss. Because the court finds that all of plaintiff's claims are subject to dismissal, the court need not address defendants' alternative argument that plaintiff lacks Article III standing.

IT IS THEREFORE ORDERED that defendants' motion to dismiss be, and the same hereby is, GRANTED.

Plaintiff has twenty days from the date this Order is signed to file an amended complaint, if he can do so consistent with this Order.

---

3. Nor do the other cases plaintiff cites aid his position. In *Salazar,* a tribal faction challenged only the BIA's determination of the faction it would recognize for government-to-government relations and the district court did not identify the controlling standard for review under the APA. *See* 967 F.Supp.2d at 89. *Payton v. U.S. Department of Agriculture* involved a farmer's challenge under the APA

of a Department of Agriculture decision and thus tribal sovereignty and immunity were not implicated. 337 F.3d 1163, 1165, 1168 (10th Cir.2003). The BIA decision reviewed in *Bernard v. U.S. Department of Interior,* dealt with the BIA's own alleged misconduct and similarly did not involve tribal sovereignty or immunity. 674 F.3d 904, 906–07 (8th Cir. 2012).